## COMMONWEALTH *vs.* WILBERT CRUZ-RIVERA.

No. 08-P-1758.

Essex. September 14, 2009. - December 17, 2009.

Present: McHUGH, COHEN, & SIKORA, JJ.

*Practice, Criminal,* Motion to suppress. *Search and Seizure,* Protective frisk, Automobile, Container. *Constitutional Law,* Search and seizure.

A District Court judge erred in denying a criminal defendant's motion to suppress evidence seized by police officers during a traffic stop, where, even assuming that the officers acted properly in ordering the defendant to leave the vehicle, pat frisking him, and searching the vehicle's interior, they exceeded constitutional limits when one officer opened a small container found in the vehicle's center console, given that such a search was not, in the circumstances presented, reasonably designed to uncover threatening weapons; where the evidence in the container played a central role in the defendant's convictions, this court vacated the judgments against him. [18-20]

COMPLAINT received and sworn to in the Salem Division of the District Court Department on July 2, 2007.

A pretrial motion to suppress evidence was heard by *Robert A. Brennan,* J., and the case was heard by *D. Dunbar Livingston,* J.

*Raymond Buso* for the defendant.

*Kenneth Bresler,* Assistant District Attorney, for the Commonwealth.

McHUGH, J. Following a trial without a jury, the defendant, Wilbert Cruz-Rivera, was convicted of possessing cocaine with intent to distribute, G. L. c. 94C, § 32A(*a*), and a drug violation near a school or park, G. L. c. 94C, § 32J.[1] His appeal is based on the denial of his motion to suppress the drugs that formed the basis for the charges and on other alleged errors. We reach none of the other errors, for we conclude that the search leading

---

[1] The defendant had been charged with the additional crimes of possession of cocaine, G. L. c. 94C, § 34, and negligent operation of a motor vehicle, G. L. c. 90, § 24(2)(*a*), but the trial judge found him not guilty of those offenses.

to discovery of the drugs was improper and therefore reverse the defendant's conviction.

*Background.* Following an evidentiary hearing on the defendant's motion to suppress, the motion judge found that on July 1, 2007, at around 10:20 P.M., Salem police Officers Gaudet and Berube were on a routine patrol in a marked police cruiser. Suddenly, a black Mercedes automobile pulled in front of them from a side street, almost striking the cruiser. Believing that the driver of the Mercedes was operating in an unsafe manner, Officer Berube activated his blue overhead lights and pulled the Mercedes over.

As the officers alighted and approached the Mercedes, they saw the defendant, who was the vehicle's sole occupant, quickly lean to the right, move toward the center console, and bend down to the floor in front of the driver's seat. The officers were concerned that the defendant was reaching for or discarding a weapon.

Officer Berube approached the driver's side door and told the defendant to step out of the car. The defendant complied and a patfrisk ensued. While Officer Berube was conducting the patfrisk, however, the defendant moved his right hand from the hood of the car to his right side several times, ignoring Officer Berube's efforts to place both of his hands on the car's hood. As a consequence, Officer Berube, with Officer Gaudet's assistance, handcuffed him so that they could complete their limited search.

As Officer Gaudet got close to the defendant to assist in the handcuffing, he recognized him from a photograph he had seen at the police station and recalled that the defendant had been arrested for a drug and firearm offense. The judge found that the drug and firearm offense had occurred "some months earlier," although it had in fact occurred in 2004. Officer Gaudet had also seen a 2005 Lowell police department flyer indicating that the defendant was wanted for questioning in connection with a drive-by shooting in which the defendant's car had allegedly been used.[2] Officer Gaudet told Officer Berube what he remem-

---

[2]The phrase "wanted for questioning" carries with it an index of suspicion somewhat higher than the evidence warranted, as is revealed by the following exchange during Officer Gaudet's cross-examination:

> *Q.:* "You didn't know at that point if he was actually the shooter, he was a driver, he was a potential witness, he owned the van? You don't know what it was?"

bered about the defendant and, as a result, both officers had concerns for their safety while in the defendant's presence. Nevertheless, that concern did not cause Officer Gaudet, at least, to depart from procedures he routinely followed even in the absence of particularized information about the person he had stopped.

The officers' patfrisk yielded nothing. Having no basis to continue their investigation, they intended to allow the defendant to leave. Before permitting him to return to his car, however, Officer Berube entered the car to search in the areas where he had seen the defendant reaching, i.e., beneath the front seat and in the center console area. He found nothing beneath the seat and saw no weapon when he opened the center console. In the console, however, Officer Berube saw, among other things, a narrow, closed, opaque vitamin pill bottle, four and one-half inches tall and one and three-fourths inches wide, no contents of which were visible through the exterior. Without shaking the bottle or otherwise attempting to determine from an exterior observation or other manipulation whether it contained a dangerous object, Officer Berube opened the bottle and discovered twelve glassine bags containing the cocaine the defendant was charged with possessing.[3]

In concluding that Officer Berube was justified in opening the container, the judge found that "[b]oth officers [had] received training indicating a proliferation of smaller weapons that are easily concealed in small containers. Such weapons include razors, knives, and pen-sized single-shot guns."[4] While acknowledging

---

*A.:* "No."

*Q.:* "It was just some information by another police department that at some point a year or two before [Lowell police] wanted to talk to him?"

*A.:* "That's correct."

[3]It appears from his testimony that Officer Berube also opened everything he found in the console that "might conceivably have any type of a weapon in it," even a razor. The judge made no finding on the number of items Officer Berube opened.

[4]Officer Gaudet's testimony on that score was as follows:

*Q.:* "Now, have you had training — have you yourself, sir, had training, or received training or received information at the police station about where weapons could be secured and secreted, sir?"

that the propriety of opening the bottle presented a close question, and that it was "perhaps a relative longshot that the pill container contained a small knife or a one-shot revolver," the judge opined that "the police were justified in absolutely ruling out the chance that in response to lingering doubts 'the answer might be a bullet.' " He also found that "there were no less intrusive means by which the officers reasonably could have ascertained the contents of the bottle."

---

*A.:* "Yes."

*Q.:* "And what information have you received on that, sir?"
    . . . .

*A.:* "We received updates whenever an update is out there about all different types of weapons that are open out in the market these days. And the weapons are getting smaller and smaller, and being stored in just about anything at this time. Whether they're knives, razor blades, and even small handguns, smaller than a card, you know, a playing card. . . . [W]e received [information about] a pen handgun, where it's a one-shot handgun contained in a small pen, maybe four or five inches long. Knives that [are] as small as two and a half inches long. And also razor blades containing small like — almost slightly larger than a bullet, where a blade can be contained."

Officer Berube's testimony was of similar tenor:

*Q.:* "And what did you do then, sir?"

*A.:* "I opened the pill bottle."

*Q.:* "Why?"

*A.:* "Based on my training and experience, based on reviewing police bulletins, a weapon these days can be concealed in just about any type of container."

*Q.:* "And, with regards to the information you had on July 1st, did you receive information about where weapons could be hid, and where things can be hid?"

*A.:* "Yes. They post them periodically in the roll call room at the station for officers safety reasons to be aware of criminals being, you know, creative in concealing weapons and hiding them. And these are different types of ways they are doing it."

*Q.:* "And at that point in time what information had [been] received, that you know of, where weapons can be hidden?"

*A.:* "I reviewed police bulletins where knives have been concealed in pins, pagers, phones. Knives in lighters, keychains by taking off like the (inaudible). In small containers, like cigarette boxes, Altoid boxes. Very small items."

*Discussion.* In reviewing a ruling on a motion to suppress, "[w]e accept the judge's subsidiary findings absent clear error but conduct an independent review of his ultimate findings and conclusions of law." *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002).

After the officers observed the defendant driving erratically, they lawfully stopped him to investigate. The defendant has not challenged the officers' order that he get out of his car, so we assume without independent examination that the order was proper. Likewise the defendant mounts no challenge to the pat-frisk the officers conducted while he was outside the car, so we also assume that that, too, was proper.

However, even a patfrisk that is "valid in its inception" may be "excessive in its scope." *Commonwealth* v. *Silva*, 366 Mass. 402, 407 (1974). A patfrisk may legitimately extend into the interior of an automobile, but police are "confined to what is minimally necessary to learn whether the suspect is armed and to disarm him once the weapon is discovered." *Commonwealth* v. *Stack*, 49 Mass. App. Ct. 227, 234 (2000), quoting from *Commonwealth* v. *Robbins*, 407 Mass. 147, 151 (1990). "The sole justification [for such a search] is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry* v. *Ohio*, 392 U.S. 1, 29 (1968). In all events, the search must be "limited in scope to a protective end." *Commonwealth* v. *Silva*, *supra* at 408.

In this case, the patfrisk of the defendant uncovered no weapons, the officers did not arrest the defendant, and they intended to release him. Under those circumstances, "[i]t can be argued with some persuasiveness that the defendant could hardly be viewed as a potential assailant after he . . . returned to his vehicle and knew that he had not been detained by the police." *Id.* at 409. Contrast *Commonwealth* v. *Santiago*, 53 Mass. App. Ct. 567, 571-572 (2002).

But even if one assumes that the police did properly search the car's interior, they exceeded constitutional limits when Officer Berube opened the small pill bottle he found in the vehicle's center console. While it is true that Officer Berube and Officer Gaudet both had been informed in various ways about the exist-

ence of very small weapons, such as single-shot pen-sized guns, knives, or razors, a limited search of an automobile in which the police are about to allow the operator to drive off cannot be justified solely by police knowledge that small weapons exist and conceivably can be stored in small containers. Instead, such a search, if proper at all, must be "reasonably designed" to uncover threatening weapons, a concept that requires consideration of all the circumstances, including the likelihood that a weapon of some kind may be present and the threat the weapon may pose under the circumstances. For example, the high likelihood that the trunk of every car contains a jack handle, dangerous when used as a club, does not justify the routine search of the trunk of every car the police detain.[5]

Contrary to the motion judge's findings, there was no evidence that pill-bottle-sized weapons had "proliferated" nor was there evidence that the defendant had a specific history of using tiny weapons. On this record, it simply was not reasonable to believe that the defendant might, upon his release with a message that he was free to go, enter his car, reach into the console, open a pill bottle, extract a weapon smaller than four and one-half inches by one and three-fourths inches and use it in an effort to harm the two nearby, fully armed police officers who had just released him. Indeed, allowing police to search the pill bottle under the circumstances this record reveals would, as a practical matter, essentially remove most constitutional brakes on police power to search the contents of motor vehicles stopped for routine traffic incidents.

In light of the foregoing, therefore, the search of the pill

---

[5]The fact that the police had not arrested the defendant and were about to release him distinguishes this case from our unpublished opinion in *Commonwealth* v. *Lima*, 62 Mass. App. Ct. 1119 (2005), on which the Commonwealth relies. There the police had arrested the defendant and, after the arrest, found a small mint container in his sock. Upon opening the container, they discovered narcotics. The need to insure that the defendant does not have, say, a razor blade is far more compelling when the defendant is in custody from which he may seek to escape than it is when the police are in the process of letting him go. Compare, e.g., *Commonwealth* v. *Ferguson*, 410 Mass. 611, 612-616 (1991). Moreover, the court in *Lima* observed that the container could have held the fruits or instrumentalities of the crime for which the defendant had been arrested. See *Commonwealth* v. *Madera*, 402 Mass. 156, 160-161 (1988). Here, as noted, there was no arrest and, until the search occurred, no crime capable of yielding fruit.

bottle was impermissible and the defendant's motion to suppress the contents of the bottle should have been allowed. Because the illegally seized evidence obviously played a central role in the defendant's conviction, the judgments are vacated, and the findings are set aside.

*So ordered.*