OPINION
GREGORY, Circuit Judge:
A jury convicted Randolph Williams of conspiracy to possess with intent to distribute heroin in contravention of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846. Williams appeals his conviction because of a stipulation which was published to the jury over his objection. He argues that this error impinged on his Sixth Amendment right “to be confronted with the witnesses against him.” U.S. Const.Amend. VI. We agree and therefore vacate his conviction.
I.
On January 8, 2008, Williams was indicted by a grand jury for conspiracy to possess with intent to distribute heroin from September 25, 2007, to October 10, 2007 in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846. Two co-defendants, Sabrina Hutchinson and Victor Jackson, were also indicted as members of the conspiracy. Subsequent to the indictment, Williams pled not guilty, charges were dropped against Sabrina Hutchinson, and Victor Jackson pled guilty.
On September 3, 2008, the district court held a hearing to discuss pretrial matters for Williams’ trial. The Assistant United States Attorney informed the court that she wished to enter a stipulation regarding the testing of the drugs at issue. She advised the court that the “defendant refuses to sign the stipulation.” J.A. 11. Williams’ defense attorney then asked the court if it “had[ ] any problem with [her] signing the stipulation over the objection of the defendant?” J.A. 11. The court allowed the defense attorney to sign the stipulation and it was read to the jury.
During the trial, the government presented its theory of the crime. According to the government, the package of heroin *131 was shipped from drug producers in Panama to the Louisville International Airport in Kentucky where it was intercepted by law enforcement. From there, if it had not been intercepted, the package would have been shipped to Sabrina Hutchinson’s house in Spartanburg, South Carolina where Victor Jackson would retrieve it, and then deliver the package to Williams. Williams, according to the government, planned to distribute the heroin thereafter.
In support of its theory the government introduced several pieces of evidence. First, the United States introduced the testimony of Officer Eric Murphy from the Customs and Border Protection Agency, who explained how the alleged heroin arrived from Panama and caught his attention. Officer Murphy subsequently conducted a field test which was positive for heroin.
Second, Victor Jackson, who was Williams’ indicted codefendant, testified that he was asked by Williams to retrieve the package in exchange for $500. During cross examination it was revealed that Jackson initially lied to police about his identity and would likely have his sentence reduced based on his testimony.
Following this testimony, the government published the stipulation by reading it to the jury [1]:
United States of America v. Randolph Williams also known as Red, Criminal No 7:08-25, the Government and counsel for the defendant, Randolph Williams, that counsel being Lora Collins stipulate the following: that on October the 11th of the 2007 [sic] lieutenant Beth Rampey Vaughn a certified forensic chemist with the Spartanburg County Sheriffs Office forensic laboratory located in Spartan-burg, South Carolina, examined and analyzed the contents of the package addressed to Sabrina Hutchinson, 142 Westover Drive No. 5, Spartanburg, South Carolina, 29306 and seized by Eric Murphy of Customs and Border protection Louisville Kentucky, that the package was seized on October the 3rd of 2007 from the UPS sorting facility and submitted to forensic chemist Rampey Vaughn under ICE file No. GV13HE08GV0C1[ ], that forensic chemist Rampey Vaughn who has been qualified as an expert in the analysis of controlled substances in both state and federal courts within the District of South Carolina determined that this— that the package contained a total weight of 98.61 — grams of heroin, a schedule I controlled substance. We do so stipulate, signed by Lora Collins, attorney for the defendant, and Assistant United States Attorney Regan A. Pendleton in Greenville, South Carolina.
J.A. 40-41. The government then introduced testimony by Officer Brian Duncan. He testified that he dressed as a UPS delivery man and delivered the package to Ms. Hutchinson’s house in order to ensure that Victor Jackson retrieve the package. Next Special Agent Paul Criswell testified as to the content of an alleged confession by Williams in which he detailed the plan to retrieve and distribute the heroin. In cross-examination, the defense pointed out that despite the custodial nature of Williams’ interrogation, no written statement was ever taken. Furthermore, the defense raised questions about whether Williams was under the influence of medication at the time of the interrogation. The government also called Investigator *132 Matt Hutchins who verified much of Special Agent Criswell’s testimony.
The defense called Williams to testify on his own behalf. Among other things, he testified that he was under the influence of the pain killer Percocet at the time of his interrogation by Investigator Hutchins and Special Agent Criswell. He also contradicted earlier statements regarding any admissions he allegedly made to law enforcement. Finally, the government called Sabrina Hutchinson who indicated that she did not know and had never spoken with Williams.
In its charge to the jury, the court indicated that “[wjhen the attorneys on both sides stipulate or agree to the existence of a fact ... you must, unless otherwise instructed, accept the stipulation as evidence and regard that fact as proved.” J.A. 97. The court listed the required elements as (1) “an agreement existed between two or more persons to possess with the intent to distribute heroin”; (2) “defendant knew of the conspiracy”; and (3) “defendant knowingly and voluntarily became a part of the conspiracy.” J.A. 102.
During their deliberation, the jury returned several questions to the court including: “What amount of drugs does it take to qualify for distribution as opposed to self-use?” J.A. 109. The court replied by indicating that the jury should use common sense but that the more drugs there are, the more likely it is that there is an intent to distribute. The court then retrieved the stipulation, marked it as the court’s exhibit no. 1, and sent it back with the jury. Later, the court gave the jury the so-called Allen charge to encourage them to reach a verdict and allowed them to go home for the night. The next morning, the jury returned a guilty verdict. The jury also found that Williams had intended to possess 98.61 grams of heroin.
Williams’ sentencing guidelines were prepared relying on a determination that he intended to possess 98.61 grams of heroin. After disposing of some other objections, the court imposed a sentence of 78 months which was at the top of the guideline range. Williams timely filed a notice of appeal.
II.
This Court reviews evidentiary rulings implicating constitutional claims de novo. United States v. Abu Ali, 528 F.3d 210, 253 (4th Cir.2008), cert, denied, — U.S.-, 129 S.Ct. 1312, 173 L.Ed.2d 584, (2009) (citing United States v. Rivera, 412 F.3d 562, 566 (4th Cir.2005)).
If we conclude that there is a constitutional violation, then evidentiary rulings of this kind are subject to harmless error review. Erroneously admitted evidence is harmless if a reviewing court is able to determine that “the constitutional error was harmless beyond a reasonable doubt.” United States v. Abu Ali, 528 F.3d 210, 256 (4th Cir.2008) (citing Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).
III.
A.
Both parties agree that the district court abused its discretion by admitting the stipulation into evidence over Williams’ objection because it violated his right to confront witnesses under the Sixth Amendment:
Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the Clause’s ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed *133 in a particular manner: by testing in the crucible of cross-examination.
Crawford v. Washington, 541 U.S. 36, 61, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Though neither party cites to a case from the Fourth Circuit, both parties cite relevant cases from outside of this Circuit which have held that where a defendant objects to the introduction of a stipulation that is nonetheless introduced at trial, a district court abuses its discretion. See e.g. Hawkins v. Hannigan, 185 F.3d 1146, 1155 (10th Cir.1999).
A majority of our sister circuits have held that “a defendant’s attorney can waive his client’s Sixth Amendment right so long as the defendant does not dissent from his attorney’s decision, and so long as it can be said that the attorney’s decision was a legitimate trial tactic or part of a prudent trial strategy.” United States v. Cooper, 243 F.3d 411, 418 (7th Cir.2001) (citation omitted); see also Janosky v. St. Amand, 594 F.3d 39, 48 (1st Cir.2010) (same); United States v. Gamba, 541 F.3d 895, 900 (9th Cir.2008) (“defense counsel may waive an accused’s constitutional rights as a part of trial strategy”); United States v. Plitman, 194 F.3d 59, 63 (2d Cir.1999) (same); United States v. Reveles, 190 F.3d 678, 683 n. 6 (5th Cir.1999) (same); Hawkins, 185 F.3d at 1155 (same).
However, other circuits have found that a defendant’s waiver is required for an attorney to waive a Sixth Amendment right. See Clemmons v. Delo, 124 F.3d 944, 956 (8th Cir.1997) (“the law seems to be clear that the right of confrontation is personal and fundamental and cannot be waived by counsel”), cert, denied, 523 U.S. 1088, 118 S.Ct. 1548, 140 L.Ed.2d 695 (1998); Carter v. Sowders, 5 F.3d 975, 981 (6th Cir.1993) (“there must be evidence in the record to support” a defendant’s waiver of a Sixth Amendment right to confrontation for it to be valid).
While this Court is inclined to require that defendants make a clear waiver of their Sixth Amendment right, the Court need not reach this question here since both counsel and the district court were aware that Williams objected to the introduction of the stipulation. We can find no reasoning or case law that would uphold a waiver of a Sixth Amendment right by defense counsel over a defendant’s objection.
Therefore, we find that the district court erred when it accepted the stipulation over Williams’ objection and violated his Sixth Amendment right.[2]
B.
Next we must determine whether Williams is entitled to a new trial as a matter of law. To make this determination, this Court must consider whether the constitutional violation was harmless. An error will be deemed harmless if “the beneficiary of ... [the] constitutional error [can] prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.” Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
*134 Williams argues that the introduction of the stipulation was not harmless. First, he argues that several pieces of evidence presented at trial would not have been admissible but for the stipulation. He also argues that the court’s use of the stipulation to answer the jury’s question about defining intent to distribute was highly prejudicial. The government argues that the error was harmless because the overwhelming uncontested evidence was sufficient to prove guilt.
We find that the harm from the stipulation extended far beyond identifying the substance in the package. The harm from the stipulation falls into two broad categories. First, while styled as a stipulation, it essentially established an element of the crime. The government, having already secured a conviction against Jackson, established the chain of custody, and verified the identity and weight of the substance in the package, had very little left to prove.
Second, prejudice also derives from the jury using the stipulation to determine whether Williams had an intent to distribute heroin. The jury’s question during deliberation “What amount of drugs does it take to qualify for distribution as opposed to self-use?” indicates that the jury was unresolved as to whether the government had met its burden of proof on the first element of the crime. In an effort to clarify the standard, the district court told the jury that “the larger the quantity of drugs increases the inference that drugs were possessed with the intent to distribute as opposed to personal use,” and then gave the jury a copy of the stipulation. J.A. 112. The stipulation was the only evidence of the amount of heroin.
Here, it is not difficult to identify the harm caused by the stipulation. The district court handed the stipulation to the jury and thereby indicated that it was important in determining whether Williams had an intent to distribute heroin. Moreover, the stipulation was marked as the court’s exhibit, giving it an air of reliability higher than other evidence presented to the jury. When an “answer to [a] jury’s question [is] supplied by the trial judge” it is “thus stamped with the imprimatur of the court.” United States v. Ofray-Campos, 534 F.3d 1, 25 (1st Cir.2008) (finding that a judge’s indication that codefendants are incarcerated unduly prejudiced a jury verdict). Therefore the stipulation was essential to the jury’s finding that Williams was guilty of intent to distribute.
We find that this prejudice alone is enough to require that the conviction be vacated. As a result of the clear prejudice stemming from the stipulation, this Court concludes that it created pervasive prejudice and that the government cannot come close to proving that it was “harmless beyond a reasonable doubt.” Arizona v. Fulminante, 499 U.S. 279, 307-08, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Therefore, the Court finds that the conviction is vacated and this matter is remanded to the district court for further proceedings.
For the reasons explained above, we

VACATE AND REMAND

. The written and signed copy of the stipulation has been lost and so we rely on the transcript for language of the stipulation.

. A stipulation may also be grounds for a violation of a defendant’s right to a jury. A defendant has a right under the Fifth and Sixth Amendments to have a jury determine guilt beyond a reasonable doubt on every element of a charged offense. United States v. Gaudin, 515 U.S. 506, 509-10, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) (United States Constitution "requires criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.”) However, this Court need not reach whether or not Williams' right to jury trial was violated since we find as a matter of law that Defendant's Sixth Amendment right was violated.