# COMMONWEALTH *vs.* LARINSO MYERS.

No. 11-P-807.

Middlesex. March 8, 2012. - July 17, 2012.

Present: KATZMANN, SIKORA, & AGNES, JJ.

*Controlled Substances. Constitutional Law,* Search and seizure, Confrontation of witnesses, Waiver of constitutional rights. *Search and Seizure,* Motor vehicle, Threshold police inquiry. *Threshold Police Inquiry. Intent. Evidence,* Intent, Certificate of drug analysis. *Practice, Criminal,* Confrontation of witnesses, Waiver. *Waiver.*

A Superior Court judge properly denied the criminal defendant's pretrial motion to suppress evidence collected as a result of a search conducted in the course of a motor vehicle stop, where the totality of the circumstances (i.e., the stop occurred late at night; the stopped position of the defendant's truck forced one police officer to approach it on the side away from the driver; the occupants did not lower the window for an interim; the defendant's arm trembled as he handed over his license and registration; the defendant had a lengthy record for crimes involving drugs and a weapon; and the defendant moved his body out of view and toward the floor of his vehicle) supported the police officers' concern for their safety in ordering the defendant to step out of the vehicle and undergo a patfrisk and in conducting a protective sweep of the vehicle. [176-178]

At the trial of indictments charging the defendant with possession with intent to distribute cocaine and with possession with intent to distribute oxycodone, the Commonwealth presented evidence sufficient to permit the finding beyond a reasonable doubt that the defendant intended to distribute all the substances at issue. [178-179]

At the trial of indictments charging the defendant with possession with intent to distribute cocaine and with possession with intent to distribute oxycodone, the defendant could waive his constitutional right to confront the analyst who prepared certificates of drug analysis that were admitted in evidence, and in accepting defense counsel's oral stipulation waiving this right in the presence of the defendant, the judge was not required to conduct a colloquy with the defendant, where nothing in the record revealed disagreement, confusion, or uncertainty on the part of the defendant at the time of the stipulation. [179-185]

INDICTMENTS found and returned in the Superior Court Department on September 30, 2008.

A pretrial motion to suppress evidence was heard by *Thomas A. Connors*, J., and the cases were heard by *Leila R. Kern*, J.

*Jane E. Ross* for the defendant.

*Fawn D. Balliro Andersen*, Assistant District Attorney, for the Commonwealth.

Sikora, J. After a jury-waived trial on July 13, 2010, a judge of the Superior Court convicted the defendant, Larinso Myers, of possession with intent to distribute cocaine (counts one and two) and possession with intent to distribute oxycodone (count three). The defendant then pleaded guilty as a subsequent offender on each count of the indictment.[1] On appeal, he contends (1) that a Superior Court judge wrongly denied his pretrial motion to suppress evidence collected as a result of a search conducted in the course of a motor vehicle stop; (2) that the Commonwealth presented evidence insufficient to prove beyond a reasonable doubt his intent to distribute cocaine and oxycodone; and (3) that defense counsel's oral stipulation to dispense with the laboratory analyst's testimony before admission in evidence of the certificates of drug analysis (drug analysis certificates) required confirmation of the defendant's personal waiver by a colloquy with the judge. For the following reasons, we affirm.

*Background.* 1. *The stop and search.* Upon the basis of a pretrial evidentiary hearing, the suppression judge made the following findings. At approximately 11:00 P.M. on February 20, 2008, State Trooper Mark Wheeler stopped a black pickup truck driven by the defendant on Route 128 northbound in the town of Wakefield. The passengers included two adult males, an adult female, and two young children. Wheeler had observed the defendant twice swerve the vehicle across traffic lane lines. The defendant's vehicle stopped in a position straddling the breakdown lane and the right traffic lane so that Wheeler could safely approach it only on the passenger side. After Wheeler reached that side, a delay ensued before anyone lowered the

---

[1]The judge convicted the defendant also of possession of heroin and possession with intent to distribute methadone. The judge placed those convictions on file with the defendant's consent and they are not before us. See *Commonwealth* v. *Guisti*, 434 Mass. 245, 246 n.1 (2001). For completeness, our narration of the facts will refer to the discovery of the methadone and heroin.

window. The defendant then handed Wheeler his driver's license and registration. Wheeler noticed that the defendant's arm and hand shook during the exchange. After the defendant stated that he was coming from Lowell and going to Brockton, Wheeler's suspicion heightened because a vehicle traveling from Lowell to Brockton would not be located on Route 128 northbound in the vicinity of Wakefield.

Returning to his cruiser, Wheeler checked the defendant's license and registration, and discovered that the defendant was on probation and had a lengthy criminal history, including charges involving drugs and a weapon. During this time, Wheeler observed the defendant moving his body down, to the right, and out of view.

At this point, State Trooper Larry Richardson arrived and offered his assistance to Wheeler. Richardson was in plain clothes and on his way home after completing his shift. The troopers decided to return to the defendant's vehicle together. Wheeler and Richardson ordered the defendant to step out of the truck and Wheeler conducted a patfrisk of the defendant. While he did not forcibly resist the patfrisk, the defendant twice deviated from Wheeler's direction to keep his hands on his head. Wheeler discovered two separate wads of money located inside the defendant's front pants' pockets, which the defendant described as $900 of rent money. After the defendant informed the troopers that he was cold, Wheeler escorted him to the back seat of his cruiser for shelter. Wheeler did not place the defendant in handcuffs.

Wheeler then opened the front driver's side door of the defendant's vehicle to conduct a search of the driver's seat area. He saw small, clear plastic bags inside the front driver's side door, and noticed that at least one of the bags contained a substance resembling powder cocaine. Wheeler next discovered a small film canister in the dashboard area. He opened it and found fourteen clear plastic bags: ten of the bags appeared to contain "crack" cocaine, three powder cocaine, and one heroin. In addition, Wheeler recovered and opened a zippered bag from underneath the driver's seat which contained a prescription bottle with the label torn off containing, inter alia, eighty-one pills with markings consistent with oxycodone and eighty white

oval pills later confirmed to be methadone. He then arrested the defendant. At his booking, officers discovered a small plastic "twist" containing heroin on the defendant's person. Although the defendant had informed Wheeler that he possessed $900 of rent money, the cash from the defendant's front pants pockets totaled $2,135.

Based on these findings, the motion judge denied the defendant's pretrial motion to suppress all evidence collected as a result of the stop, search, and arrest.

2. *Trial.* On September 30, 2008, a Middlesex County grand jury returned an indictment charging the defendant with (1) possession of cocaine with intent to distribute (crack) (subsequent offense); (2) possession of cocaine with intent to distribute (powder) (subsequent offense); (3) possession of oxycodone with intent to distribute (subsequent offense); (4) possession of methadone with intent to distribute; and (5) possession of heroin.[2]

At the subsequent jury-waived trial in Superior Court, the Commonwealth presented two witnesses. Trooper Wheeler recounted the events on the night of the defendant's arrest. Detective Robert Hall of the Everett police department, a police officer since October, 1993, and a narcotics unit investigator for the previous eight years, testified to the modes of packaging and distribution of cocaine, methadone, and oxycodone in Middlesex County during his experience.[3] Additionally, the Commonwealth introduced in evidence drug analysis certificates which identified the composition and quantity of the recovered controlled substances. Although the defendant had the right to require the testimony of the analyst who signed the drug analysis certificates,[4] defense counsel, in response to a question from the judge, orally stipulated in the presence of the defendant that he did not object

---

[2]As to counts 4 and 5, see note 1, *supra.*

[3]Detective Hall estimated that he had participated in more than 200 investigations of crack cocaine distribution, almost one hundred of oxycodone dealings, and about fifty to sixty involving methadone. The trial judge had denied the defendant's motion in limine to exclude Hall's opinion as improper expert testimony. The defendant has not appealed from that ruling.

[4]We note that the trial took place in July, 2010, just over a year after the decision issued in *Melendez-Diaz* v. *Massachusetts,* 557 U.S. 305 (2009).

to the admission of the certificates without the analyst's testimony.[5] No colloquy between the judge and the defendant took place.

The defendant testified. Defense counsel sought to establish that the defendant possessed the controlled substances for his own personal use. With regard to the large amount of cash recovered at the time of the stop, the defendant testified that he owned rental properties in Brockton and Springfield, and that the cash comprised rent money collected from his tenants. After denying the defendant's motion for a required finding of not guilty, the judge convicted the defendant of all charges.[6]

*Discussion.* 1. *Suppression.* We consider first the defendant's argument that the motion judge wrongly denied his pretrial motion to suppress. "In reviewing the denial of a motion to suppress, we accept the motion judge's subsidiary findings of fact absent clear error, and conduct an independent review of the judge's ultimate findings and conclusions of law." *Commonwealth* v. *Stephens*, 451 Mass. 370, 381 (2008). We do not review the motion judge's determinations regarding the weight and credibility of the testimony presented at the suppression hearing. *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990), and cases cited.

The defendant challenges the troopers' order to step out of the vehicle and undergo a patfrisk. Recognizing that "it does not take much for a police officer to establish a reasonable basis to justify an exit order or search based on safety concerns, and, if the basis is there, a court will uphold the order," *Commonwealth* v. *Gonsalves*, 429 Mass. 658, 664 (1999), we conclude that the

---

[5]As the prosecutor began to introduce the first of the certificates, she stated: "I believe there will be a stipulation to the fact that [the seized substance] was submitted to the lab, and that if called [to testify], the chemist . . . would indicate that she obtained an item that was seized from this defendant's truck on the date in question, and that this item was analyzed and found to obtain 3.53 grams of off-white rock powder in ten knotted plastic bags that was in fact cocaine." The judge then stated, "Let's stop there. Is there any objection to that?" Defense counsel responded, "No, Your Honor." Defense counsel had earlier stated, "There is going to be a stipulation to a chemist coming in and testifying that they had completed the analysis and the certificates of analysis can be admitted." Defense counsel did not object when the Commonwealth subsequently introduced in evidence the drug analysis certificates.

[6]After his conviction of the underlying charges, the defendant pleaded guilty to the subsequent offense charges on counts 1-3.

troopers had a reasonable basis to issue the exit order and conduct the patfrisk of the defendant here. See *Commonwealth* v. *Bostock*, 450 Mass. 616, 619-621 (2008) (explaining that *Gonsalves* applies to routine traffic stops).

The stop occurred late at night as the result of apparent lane violations. The stopped position of the pickup truck forced Wheeler to approach it on the side away from the driver. The occupants did not lower the window for an interim. The defendant's arm trembled as he handed over his license and registration. He had a lengthy criminal record for crimes involving drugs and a weapon. He moved his body out of view and toward the floor of his vehicle so as to arouse Wheeler's suspicion. This evidence was sufficient to support a rational concern for the troopers' safety. See *Commonwealth* v. *Goewey*, 452 Mass. 399, 407 (2008) (exit order and patfrisk justified by defendant's nervousness, furtive movements, and expired item of identification). See also *Commonwealth* v. *Stampley*, 437 Mass. 323, 328-330 (2002), and cases cited. Despite the defendant's attempt to characterize the exit order and patfrisk as impermissible responses to the defendant's simple nervousness, *Commonwealth* v. *Hooker*, 52 Mass. App. Ct. 683, 688 (2001), the totality of the circumstances supported the cautionary response by the troopers.

The justification for the patfrisk entitled Wheeler also to conduct a protective sweep of the vehicle "confined in scope to an intrusion reasonably designed to discover a weapon." *Commonwealth* v. *Graham*, 78 Mass. App. Ct. 127, 129 (2010) (quotation and citations omitted). "A patfrisk may legitimately extend into the interior of an automobile, but police are 'confined to what is minimally necessary to learn whether the suspect is armed and to disarm him once the weapon is discovered.' " *Commonwealth* v. *Cruz-Rivera*, 76 Mass. App. Ct. 14, 18 (2009), quoting from *Commonwealth* v. *Stack*, 49 Mass. App. Ct. 227, 234 (2000). See *Commonwealth* v. *Almeida*, 373 Mass. 266, 272-273 (1977). Although the defendant sat in the back seat of Wheeler's cruiser after the patfrisk and therefore could no longer have reached inside the vehicle, he could have returned to the vehicle and recovered a hidden weapon. See *Commonwealth* v. *Santiago*, 53 Mass. App. Ct. 567, 571 (2002). See also *Com-*

*monwealth* v. *Lantigua*, 38 Mass. App. Ct. 526, 528 (1995) ("[P]rior to allowing the defendant to reenter the car to obtain the registration, the officers could properly effect a *Terry*-type search of the areas of the car which would be readily accessible to the defendant on reentering").[7] The defendant's agitation during his patfrisk would also warrant an increased concern for the troopers' safety upon the defendant's return to his vehicle.

2. *Evidence of intent.* We consider next the defendant's contention that the Commonwealth presented evidence insufficient to prove beyond a reasonable doubt the intention to distribute the cocaine and oxycodone. We must ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979).

The Commonwealth presented evidence sufficient to permit the finding beyond a reasonable doubt that the defendant intended to distribute all of the substances at issue. Although the defendant testified that he possessed the entirety of them for his own personal use, the trial judge did not have to credit his testimony, and the evidence permitted a rational trier of fact to find distributive intent. See *Commonwealth* v. *Rivera*, 425 Mass. 633, 648 (1997), quoting from *Commonwealth* v. *Ellis*, 356 Mass. 574, 578-579 (1970) (Commonwealth may prove intent "by inference from all the facts and circumstances developed at the trial"). As explained by Detective Hall's testimony, the variety, amount, and packaging of the controlled substances recovered from the defendant permitted the inference that he possessed them for purposes well beyond personal use. Additionally, the judge could weigh the defendant's lack of utensils commonly used to consume drugs. *Commonwealth* v. *Mitchell*, 47 Mass. App. Ct. 178, 182 (1999). Finally, the $2,135 in cash discovered on the defendant's person contributed strongly to the same

---

[7]Although the defendant challenges only the justification for the initiation of the limited protective sweep, we note that Wheeler's immediate finding of the clear plastic bags containing apparent drugs provided probable cause for the remainder of the search, including the opening of the film canister. *Commonwealth* v. *Moses*, 408 Mass. 136, 145 (1990). Contrast *Commonwealth* v. *Alvarado*, 420 Mass. 542, 554-555 (1995).

finding. See *Pena* v. *Commonwealth*, 426 Mass. 1015, 1018 (1998), citing *Commonwealth* v. *Clermy*, 421 Mass. 325, 331 (1995). Taken together and viewed in the light most favorable to the Commonwealth, this evidence amply supported the finding of distributive intent.

3. *Waiver of the right to confront the analyst.* We now consider the defendant's contention that the trial judge should have conducted a colloquy with him to ensure his personal waiver of the right to confront the analyst who prepared the drug analysis certificates admitted in evidence. See *Melendez-Diaz* v. *Massachusetts*, 557 U.S. 305, 321-322 (2009); *Commonwealth* v. *Vasquez*, 456 Mass. 350, 352 (2010). The defendant argues that the colloquy is constitutionally required because criminal defendants must knowingly and intelligently waive their constitutional rights.[8] See *Brady* v. *United States*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences"). The contention is a matter of first impression in the Commonwealth.[9]

Since the United States Supreme Court's decision in *Melendez-Diaz* v. *Massachusetts, supra,* the only Federal Circuit Court of Appeals to consider the specific question whether defense counsel may waive a defendant's right to confront the analyst before admission of a drug analysis certificate approved the practice. *United States* v. *Robinson*, 617 F.3d 984, 989-990 (8th Cir. 2010). There, the Eighth Circuit held that "[w]ithout making his objection known, we presume that [the defendant] acquiesced in his counsel's stipulation." *Ibid.*[10]

---

[8]The defendant's appellate counsel has neither argued that trial counsel furnished ineffective assistance nor proposed a specific standard of review for this circumstance (e.g., harmless error beyond a reasonable doubt or substantial risk of a miscarriage of justice). Because we conclude, as matter of law, that a personal colloquy is not mandatory either generally or in the circumstances of this case and that therefore no error has occurred, we need not reach the undeveloped issues of ineffective assistance and standard of review.

[9]We disagree with the defendant's characterization of his defense counsel's oral stipulation (see note 5, *supra*) as excusing the Commonwealth from its burden to prove each element of the charged offenses beyond a reasonable doubt. See note 14, *infra.*

[10]The Fourth, Sixth and Eighth Circuit Courts of Appeals have suggested,

*Robinson* is consistent with all pre-*Melendez-Diaz* decisions of the Federal Circuit Courts of Appeals addressing the broader question whether defense counsel may waive a defendant's right to confrontation. See *Cruzado* v. *Puerto Rico*, 210 F.2d 789, 790-791 (1st Cir. 1954) (stipulation to evidence introduced at separate trial, including entire cross-examination and redirect examination of all witnesses); *Wilson* v. *Gray*, 345 F.2d 282, 286-288 (9th Cir. 1965) (stipulation to transcript of preliminary hearing); *United States* v. *Plitman*, 194 F.3d 59, 63-64 (2d Cir. 1999) (stipulation to hearsay testimony); *United States* v. *Reveles*, 190 F.3d 678, 683 (5th Cir. 1999) (waiver of objection to incriminating statement given by nontestifying codefendant);[11] *Hawkins* v. *Hannigan*, 185 F.3d 1146, 1155 (10th Cir. 1999)

without deciding, that defense counsel's waiver of a defendant's right to confrontation requires the personal affirmation of the defendant. In a recent case in which defense counsel stipulated to the composition and weight of controlled substances contained in a drug analysis certificate, the Fourth Circuit expressed its inclination "to require that defendants make a clear waiver of their Sixth Amendment right [to confrontation]." *United States* v. *Williams*, 632 F.3d 129, 133 (4th Cir. 2011) (concluding that trial judge wrongly accepted defense counsel's stipulation over noted objection of defendant). The Sixth Circuit has held that the validity of defense counsel's waiver of a defendant's right to confrontation turns on whether the record contains evidence to support a finding that defense counsel informed the defendant of the right to confrontation and the consequences of its waiver. *Carter* v. *Sowders*, 5 F.3d 975, 981 (6th Cir. 1993). Finally, the Eighth Circuit, before deciding *United States* v. *Robinson*, 617 F.3d 984 (8th Cir. 2010), twice stated in dicta that waiver of the right to confrontation requires personal assent. See *Phillips* v. *Wyrick*, 558 F.2d 489, 496 (8th Cir. 1977); *Clemmons* v. *Delo*, 124 F.3d 944, 956 (8th Cir. 1997). Although the United States Supreme Court has not considered the specific question whether defense counsel may waive a defendant's right to confront an analyst before introduction in evidence of a drug analysis certificate, the majority in *Melendez-Diaz*, 557 U.S. at 332, found that "[d]efense attorneys and their clients will often stipulate to the nature of the substance [identified in a drug analysis certificate] . . . [without] insist[ing] on live testimony whose effect will be merely to highlight rather than cast doubt upon the forensic analysis." The Court's failure to mention the need for a defendant's personal waiver of the right to confrontation suggests that personal waiver is unnecessary. Justice Scalia, the author of the majority opinion in *Melendez-Diaz*, remarked one year before that decision, "I doubt many think that the Sixth Amendment right to confront witnesses cannot be waived by counsel." *Gonzalez* v. *United States*, 553 U.S. 242, 256 (2008) (Scalia, J., concurring).

[11]The court in *Reveles*, *supra* at 683, relied on its earlier decision in *United States* v. *Stephens*, 609 F.2d 230 (5th Cir. 1980), in which it held that "counsel in a criminal case may waive his client's Sixth Amendment right of confronta-

(stipulation to hearsay identification evidence); *United States* v. *Cooper*, 243 F.3d 411, 418 (7th Cir. 2001) (stipulation to anonymous tip that led to defendant's arrest). Those courts concluded generally that defense counsel may waive a defendant's right to confrontation as a matter of legitimate trial strategy so long as the defendant does not object. As explained by the First Circuit in *Cruzado*, 210 F.2d at 791, "When an accused is represented by counsel, it is generally to be assumed that counsel adapts his trial tactics to what in his judgment is for the best interests of the accused. If the accused, being present, manifests no dissent, it is usually fair to assume that he approves of, or at least acquiesces in, the decisions taken in open court in his behalf by his counsel."

In Massachusetts, the Supreme Judicial Court has rejected "constitutionalizing a particular means" for waiving constitutional rights. *Ciummei* v. *Commonwealth*, 378 Mass. 504, 508 (1979). Recognizing that "there is no precise way to compare the value of one right with another," *ibid.*, Massachusetts law currently requires a defendant's personal waiver for only a "very short list of rights." *Commonwealth* v. *Amirault*, 424 Mass. 618, 651 n.23 (1997). In *Commonwealth* v. *Conley*, 43 Mass. App. Ct. 385, 391 (1997), this court recognized that only a limited number of rights "are [waivable by] the defendant alone," including "whether to plead guilty, to waive the right to trial by jury, to testify in one's behalf, to take an appeal, or to waive the right to counsel."[12] We distinguished other rights as relating to "strategic or tactical matters, rest[ing] ultimately in

---

tion by stipulating to the admission of evidence, so long as the defendant does not dissent from his attorney's decision, and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy." *Id.* at 232-233. (We note, however, that notwithstanding the Fifth Circuit's holding, the trial judge in *Stephens* had, in fact, conducted a colloquy with the defendant before accepting his waiver. *Id.* at 233.)

[12]The American Bar Association has taken a similar position:

"(a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel include:

"(i) what pleas to enter;

"(ii) whether to accept a plea agreement;

counsel, with the degree of required client consultation and participation dependent on the circumstances." *Ibid.* See, e.g., *Commonwealth* v. *Edward*, 75 Mass. App. Ct. 162, 173-174 (2009) (defendant's waiver of fundamental or "structural" right to public trial must be knowing but "need not necessarily appear on the record").[13]

With respect to the right to confrontation, the Supreme Judicial Court has stated, "Nor would we want to add [the right to confrontation] to the very short list of rights . . . that must be

---

"(iii) whether to waive jury trial;

"(iv) whether to testify in his or her own behalf; and

"(v) whether to appeal.

"(b) Strategic and tactical decisions should be made by defense counsel after consultation with the client where feasible and appropriate. Such decisions include what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and what evidence should be introduced.

"(c) If a disagreement on significant matters of tactics or strategy arises between defense counsel and the client, defense counsel should make a record of the circumstances, counsel's advice and reasons, and the conclusion reached. The record should be made in a manner which protects the confidentiality of the lawyer-client relationship."

Standard 4-5.2 of the ABA Standards for Criminal Justice: Control and Direction of the Case (3d ed. 1993).

[13]In *New York* v. *Hill*, 528 U.S. 110, 114-115 (2000), the Supreme Court expressed similar respect for the process of private consultation and decision-making by defendants and counsel:

" 'Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has — and must have — full authority to manage the conduct of the trial.' *Taylor* v. *Illinois*, 484 U.S. 400, 417-418 (1988). As to many decisions pertaining to the conduct of the trial, the defendant is 'deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney." ' *Link* v. *Wabash R. Co.*, 370 U.S. 626, 634 (1962) (quoting *Smith* v. *Ayer*, 101 U.S. 320, 326 [1880]). Thus, decisions by counsel are generally given effect as to what arguments to pursue, see *Jones* v. *Barnes*, 463 U.S. 745, 751 (1983), what evidentiary objections to raise, see *Henry* v. *Mississippi*, 379 U.S. 443, 451 (1965), and what agreements to conclude regarding the admission of evidence, see *United States* v. *McGill*, 11 F.3d 223, 226-227 (CA1 1993). Absent a demonstration of ineffectiveness, counsel's word on such matters is the last."

waived personally by a defendant and cannot be waived by his counsel." *Commonwealth* v. *Amirault,* 424 Mass. at 651 n.23.[14] Like the Supreme Court in *Melendez-Diaz,* the *Amirault* court reasoned that "confrontation is not always an advantage to the accused; if the witness is firm as he confronts the accused, this may add to his credibility." *Id.* at 645. Although the court decided *Amirault* before the Supreme Court decision in *Melendez-Diaz,* nothing in *Melendez-Diaz* or its progeny compels the addition of the waiver of a defendant's right to confront the author of a drug analysis certificate to *Amirault's* "short list."

After careful consideration of these precedents, we conclude that a defendant's waiver of the right to confront the analyst before admission in evidence of a drug analysis certificate does not require a colloquy between judge and defendant to confirm the defendant's personal waiver. So long as defense counsel's waiver occurs in the presence of the defendant, the defendant does not object, and the waiver objectively appears to further legitimate trial strategy, a judge exercising sound discretion need only conduct a colloquy with a defendant in circumstances of detectable disagreement, confusion, or uncertainty on the part of the defendant. An individual trial judge, of course, retains discretion to conduct a colloquy as a matter of personal routine.[15]

As noted above, a defendant's right to confront the analyst in such a case falls within the list of rights related to "strategic or

---

[14]As a separate category, a trial on stipulated facts requires that a judge inform a defendant of the right to confrontation as part of a longer colloquy advising the defendant of the bundle of constitutional rights forfeited. *Commonwealth* v. *Monteiro,* 75 Mass. App. Ct. 280, 288 (2009). See generally *Commonwealth* v. *Castillo,* 66 Mass. App. Ct. 34, 37 (2006). Our case does not involve such a trial.

The defendant's characterization of his defense counsel's oral stipulation as excusing the Commonwealth from its burden to prove each element of the charged offenses beyond a reasonable doubt (see notes 5 & 9, *supra*) is therefore inapt. Despite defense counsel's oral stipulation that the chemist, if called, would testify to the results of the laboratory analyses identifying the controlled substances seized from the defendant and their weights, the Commonwealth maintained the burden of proving beyond a reasonable doubt every element of the charges against the defendant.

[15]If defense counsel waives the defendant's right to confront the analyst outside the presence of the defendant, the judge may find it particularly useful to ask the defendant on the record whether the defendant understands that the analyst will not testify at trial.

tactical matters, rest[ing] ultimately in counsel, with the degree of required client consultation and participation dependent on the circumstances." *Commonwealth* v. *Conley*, 43 Mass. App. Ct. at 391.[16] Particularly with regard to the comparative benefit or detriment of the analyst's testimony before introduction in evidence of a drug analysis certificate, a defendant benefits from "the unique training and professional experience which are the province of the attorney." *Commonwealth* v. *Hernandez*, 63 Mass. App. Ct. 426, 431 (2005). That training and experience may often serve to protect the defendant from himself. See, e.g., *Melendez-Diaz* v. *Massachusetts*, 557 U.S. at 332.

Additionally, we conclude that a prophylactic rule requiring a defendant's personal waiver confirmed by colloquy would lead a judge to "intrude on the defense presentation in a manner that would jeopardize the primary responsibility [which] our system places on counsel." *Commonwealth* v. *Amirault*, 424 Mass. at 651 n.23. Accordingly, we do not impose the categorical requirement of a colloquy that might drive a wedge between defense counsel and defendant, and undermine the trust, confidence, autonomy, and privacy of their relationship. See, e.g., *Commonwealth* v. *Freeman*, 29 Mass. App. Ct. 635, 641 (1990) (noting that "a colloquy [regarding a defendant's decision not to testify] might give the defendant the impression that he was being urged by the judge to testify and to waive his right not to testify"); *Commonwealth* v. *Ramsey*, 79 Mass. App. Ct. 724, 735 (2011) (Grasso, J., concurring in part and dissenting in part).[17]

In sum, the judge correctly accepted defense counsel's oral

---

[16]The Massachusetts Rules of Professional Conduct explain that

> "there are circumstances, in litigation or otherwise, when lawyers are required to act on their own with regard to legal tactics or technical matters and they may and should do so, albeit within the framework of the objectives of the representation."

Comment [1] to Mass.R.Prof.C. 1.2, 426 Mass. 1310 (1998).

[17]In the present matter, we find eminently reasonable the strategy of avoidance of the analyst's testimony. As the defense focused on the "intent to distribute" element of the charges against the defendant, confrontation of the analyst would have been of little help and potential harm. The analyst could have dwelled at length upon the quality, quantity, and variety of the certified substances. Although the testimony of the analyst would have permitted defense counsel to inquire about the quantity of the controlled substances

stipulation in the presence of the defendant. We do not accept the proposed presumption that a defendant cannot knowingly and intelligently waive his right to confront the analyst without a colloquy between judge and defendant. Again, "it is usually fair to assume that [the defendant] approves of, or at least acquiesces in, the decisions taken in open court in his behalf by his counsel." *Cruzado* v. *Puerto Rico*, 210 F.2d at 791. The defendant has not demonstrated an unknowing or unintelligent waiver of his right to confrontation. We find no reason for the trial judge to have conducted a colloquy with the defendant where the defendant did not object to the oral stipulation by defense counsel, and where nothing in the record reveals disagreement, confusion, or uncertainty on the part of the defendant at the time of the stipulation. We decline the proposal to lengthen the "very short list" of rights requiring a defendant's personal waiver. *Commonwealth* v. *Amirault*, 424 Mass. at 651 n.23.

*Judgments affirmed.*

identified in the certificates — a fact which bears on whether the defendant intended to distribute the controlled substances, compare *Commonwealth* v. *Wilson*, 441 Mass. 390, 401-402 (2004) — we find no flaw in the decision to focus instead on the defendant's history of personal drug use to rebut that element of the charges.