## COMMONWEALTH *vs.* ANGEL L. SANTIAGO.

No. 00-P-114.

Middlesex. September 6, 2001. - January 15, 2002.

Present: JACOBS, GRASSO, & COWIN, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Automobile, Motor vehicle. *Practice, Criminal,* Motion to suppress, Presumptions and burden of proof. *Assault with Intent to Rape. Assault by Means of a Dangerous Weapon. Kidnapping.*

On a pretrial motion to suppress evidence brought by a criminal defendant, the judge's determination that a police officer's search of the defendant's automobile for weapons during a justified motor vehicle stop did not violate the defendant's constitutional rights was plainly warranted by the evidence; the defendant driver and the vehicle matched descriptions arising from recent attacks in the area by an individual armed with a dangerous weapon which was possibly a firearm, and therefore the officer could take reasonable steps to ensure his safety, including removing the driver from the vehicle and searching the vehicle for weapons before allowing the driver to return to the vehicle, without transforming the stop into an arrest. [570-572]

At a criminal trial, the prosecutor's questions to the defendant on cross-examination did not call for the defendant to comment upon the testimony of another witness, where the questions permissibly focused the jury on the implausibility of the defendant's claim. [572-573]

This court concluded that the evidence at the trial of criminal indictments charging two counts each of assault with intent to rape, assault with a dangerous weapon, and attempted kidnapping, was sufficient to support convictions on those changes, and therefore the judge did not err in denying the defendant's motions for required findings of not guilty. [573-575]

INDICTMENTS found and returned in the Superior Court Department on January 23, 1998.

A pretrial motion to suppress evidence was heard by *Martha B. Sosman,* J., and the cases were tried before *Thomas E. Connolly,* J.

*William R. Hill, Jr.,* Committee for Public Counsel Services, for the defendant.

*Loretta M. Lillios*, Assistant District Attorney, for the Commonwealth.

COWIN, J. A jury convicted the defendant on the sixteen counts with which he was charged, including aggravated rape, assault with intent to rape, indecent assault and battery on a person over fourteen, assault with a dangerous weapon, kidnapping, attempted kidnapping, and unlawful possession of a dangerous weapon, arising out of attacks and attempted attacks perpetrated on four young women[1] from December 15, 1997, to December 19, 1997. The defendant asserts that his car was searched unlawfully, and that it was error to deny his motion to suppress the products thereof. He argues in addition that certain questions asked by the prosecutor during cross-examination of the defendant improperly shifted the burden of proof. Finally, he claims that the evidence was insufficient to support convictions on six of the charges, and that his motions for required findings thereon should have been allowed. There was no error. We set forth the material facts as necessary throughout the opinion.

1. *The motion to suppress.* We accept the subsidiary findings of the motion judge absent clear error. *Commonwealth* v. *Sanna*, 424 Mass. 92, 97 (1997). By December 19, 1997, the Everett police had received reports of a rape of Yvonne on December 15, 1997; an assault on and attempted abduction of Victoria on December 16, 1997; and an assault on and attempted abduction of Stephanie on December 18, 1997. The perpetrator of the attacks was described as a Hispanic male, mid-twenties or thirties, five feet, six inches or five feet, seven inches tall, medium build, and having a small mustache. He carried a weapon which the victims described variously as two knife blades with a wooden handle; a long-handled knife; or a long wooden handle and blade, but possibly a firearm. Two of the victims were approached by him in a motor vehicle. One described it merely as a black Jeep; the other identified it specifically as a dark Jeep Cherokee Limited Edition with gold trim.[2]

At subsequent roll calls, Everett police officers were informed

---

[1]Pursuant to G. L. c. 265, § 24C, we use the pseudonyms Yvonne, Victoria, Stephanie, and Julia for the four victims.

[2]The attempted abduction in Everett of another young woman on December 19, 1997, by a Hispanic man with a thin mustache driving a black or dark

of the reported attacks, and advised to watch for a black or dark Jeep Cherokee with gold trim driven by a Hispanic male with a thin mustache, medium build and medium height. The officers were also informed that the suspect in the attacks had carried knives and possibly a firearm. Officer Sabatino Rozza attended a roll call, heard those instructions, and commenced his evening shift in a marked police vehicle on December 19, 1997.

At about 5:30 P.M., Rozza learned from a police broadcast that there had been another report of an attempted abduction in Everett, this also involving a man with a thin mustache driving a black or dark blue Jeep. Approximately fifteen minutes later, Rozza observed a vehicle approaching the wrong way on a one-way street. Rozza activated his lights for the purpose of stopping the vehicle for the traffic offense, whereupon the vehicle turned to the right, again heading the wrong way on a one-way street, and came to a stop. As the vehicle turned, Rozza observed that it was a black Jeep Cherokee with gold trim which was driven by a young Hispanic male of average build with a thin mustache.[3] He radioed that he was stopping the suspect and requested backup.

For safety reasons, Rozza approached the vehicle cautiously with his service revolver drawn. He ordered the driver (subsequently identified as the defendant) to show his hands, which he did, then opened the car door and ordered the driver to get out, which he also did. Rozza frisked the driver, found no weapons on his person, and handcuffed the driver. When other officers arrived soon thereafter, they placed the driver in a cruiser while Rozza looked inside the passenger area of the vehicle for weapons. Inside the vehicle, Rozza came upon what appeared to be a large stick, which in fact turned out to be two double-edged knives fit together within a wooden handle.. The driver was then arrested for possession of a dangerous weapon,

blue Jeep Cherokee was reported but did not result in separate charges against the defendant.

[3]The evidence indicated that Rozza was not able to distinguish the vehicle prior to its nearing the turn onto the second one-way street.

and a subsequent inventory search of the Jeep disclosed two smaller knives.[4]

The defendant asserts that Rozza lacked probable cause to justify either seizure of the defendant or search of the vehicle, and that accordingly the admission of the evidence obtained violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution and art. 14 of the Declaration of Rights of the Massachusetts Constitution. He appears to concede that Rozza was entitled to stop the vehicle upon observing the commission of a traffic offense. However, he argues in essence that the valid motor vehicle stop was transformed into an improper arrest without probable cause, and that the subsequent entry of the vehicle was unlawful. The motion judge ruled, correctly in our view, that Rozza, in the course of a justified *Terry* stop, see *Terry* v. *Ohio*, 392 U.S. 1 (1968), permissibly checked the interior of the Jeep for weapons and that there was no violation thereby of the defendant's constitutional rights.

The traffic violation having provided a legally adequate ground for the initial stop, *Commonwealth* v. *Santana*, 420 Mass. 205, 207 (1995), Rozza was entitled to take reasonable precautions for his own protection. *Commonwealth* v. *Robbins*, 407 Mass. 147, 151 (1990). Under the circumstances of this case, the officer could order the driver to come out of the automobile, *Commonwealth* v. *Gonsalves*, 429 Mass. 658, 663 (1999), and use handcuffs or display a weapon where appropriate to ensure the officer's safety. *Commonwealth* v. *Williams*, 422 Mass. 111, 117-119 (1996). "It is settled in law that, in appropriate circumstances, a *Terry* type of search may extend into the interior of an automobile so long as it is limited in scope to a protective end." *Commonwealth* v. *Silva*, 366 Mass. 402, 408 (1974). *Commonwealth* v. *Almeida*, 373 Mass. 266, 272 (1977), *S.C.*, 9 Mass. App. Ct. 813 and 381 Mass. 420 (1980). *Commonwealth* v. *Alvarado*, 427 Mass. 277, 284 (1998).

Reasonable efforts to ensure the officer's safety do not transform a stop into an arrest. *Commonwealth* v. *Alvarado, su-*

---

[4]Rozza did not contend that the "stick," which turned out to be the twin knives, was in plain view. He testified that he did not see it until he entered the vehicle.

*pra* at 284. *Commonwealth* v. *Fitzgibbons*, 23 Mass. App. Ct. 301, 305 (1986). What is reasonable is a product of the attendant circumstances. Here, what began as a routine traffic stop was rapidly transformed into a situation potentially perilous to the police officer when the driver and vehicle matched descriptions arising from recent attacks in the area by an individual armed with a dangerous weapon, possibly a firearm. That it was reasonable for Rozza to take steps to ensure his safety is, given these conditions, obvious. Indeed, it would have been foolhardy not to have done so. Nothing in either the Federal or State Constitution required that Rozza make of himself a passive target while performing his duties as a police officer.

The defendant would have us draw a line prohibiting as a further protective step Rozza's entry into the passenger compartment of the vehicle to look for weapons. He asserts that the entry was not justified on safety grounds because he was handcuffed and seated in a squad car under the watch of two other officers, thereby eliminating any possibility that he could endanger Rozza. Thus, he argues, there is a clear inference that Rozza's search of the interior of the Jeep was not motivated by genuine concern for Rozza's safety, but rather by a desire to obtain evidence that the suspect was in fact the rapist. Such a search could not validly be undertaken without probable cause. The defendant buttresses his argument that Rozza's true purpose was a search for evidence by observing that Rozza never asked to see the defendant's driver's license or automobile registration.

The defendant ignores the fact that *Terry* stops frequently terminate with the release of the suspect. If, as the defendant contends, Rozza lacked probable cause for an arrest, and if nothing developed during the stop that created probable cause, the police would shortly have been required to let their suspect go. He would then presumably have returned to his Jeep. Knowing that the suspect was possibly, if not probably, the dangerous object of a police investigation, Rozza was not required to risk becoming a victim upon the suspect's reentry into the vehicle. Nor is this affected by the fact that Rozza had not sought the suspect's license or registration, since a check of the passenger compartment for weapons was obviously in order prior to permitting the driver to enter the vehicle to procure such

documents. *Commonwealth* v. *Lantigua*, 38 Mass. App. Ct. 526, 528 (1995). The determination of the motion judge that Rozza's search of the passenger compartment was for his own protection was plainly warranted by the evidence.[5]

2. *The prosecutor's questions on cross-examination.* The victim Julia testified as part of the Commonwealth's case that the defendant approached her in a dark-colored Jeep while she was walking home from Chelsea High School, and forced her into the Jeep by threatening her with a long knife. He drove her to a cemetery in Everett, where he raped her in the back seat of the vehicle. The attack caused her to bleed. When the act was completed, the defendant permitted Julia to get out of the Jeep, and then drove off. Julia wrote down the Jeep's license plate number and the word "Jeep" on a homework assignment that she had been carrying in her pocket.[6] She also testified that her attacker had been wearing a blue sweatshirt. Other evidence demonstrated, by means of DNA testing, that a blood stain found in the rear seat of the defendant's Jeep matched Julia's blood sample.

The defendant testified. He stated that he had engaged in consensual sex with Yvonne. He stated further that he had never seen Victoria, Stephanie or Julia prior to their testimony at trial, and that he had never been to the cemetery in Everett where Julia claimed her rape had taken place. He also relied on an alibi.

On cross-examination, the prosecutor posed three questions that provoked objections: specifically, (1) "Do you have an

---

[5]The Commonwealth has not attempted to justify the search as one incident to a lawful arrest or one permitted by virtue of exigent circumstances, nor was the motion judge asked to rule on such propositions. We do not dismiss the possibility that, given the unusual make of the vehicle, the description of the driver, the time and location, probable cause to arrest may have existed. "Probable cause to arrest exists when, at the moment . . . , the facts and circumstances known to the police officers were sufficient to warrant a person of reasonable caution in believing that the defendant had committed or was committing a crime." *Commonwealth* v. *Gullick*, 386 Mass. 278, 283 (1982). Given that the evidence was lawfully obtained on other grounds, it is not necessary to reach the question.

[6]By means of the license plate number, the police identified the vehicle as one registered to the defendant. The creation of a photographic array followed, from which the defendant was separately identified by each of the four victims.

explanation how your license plate number wound up on the back of [Julia's] homework?" (2) "Do you have an explanation as to how [Julia] identified this [the defendant's blue sweatshirt, which he wore at the time of his arrest]?" and (3) "Do you have an explanation as to how the blood got in your back seat?" The defendant answered that he had no explanation regarding the first two propositions, and stated that he believed that the blood in the back seat of his Jeep was not Julia's blood.

The defendant objected to each of the questions on the ground that the question called for a comment upon the testimony of another witness. He argues now that the questions potentially shifted the burden of proof, because the jury might have convicted solely on the basis of the defendant's inability to provide explanations. It is true that one witness may not be asked to comment on the credibility of another witness. *Commonwealth* v. *Nunes*, 430 Mass. 1, 7 (1999). That is not what occurred here. The defendant testified and denied that he attacked Julia in his Jeep in the cemetery. In addition, he presented an alibi witness regarding his whereabouts at the time of Julia's rape. Having voluntarily taken the stand, the defendant was subject to cross-examination like any other witness. The questions permissibly focused the jury on the implausibility of the defendant's claim that he was elsewhere when his victim was writing down his license plate number, identifying his clothing, and leaving her blood in his vehicle. There was no burden shifting and no error. Furthermore, the trial judge strongly instructed the jury on the presumption of innocence and the Commonwealth's burden.[7]

3. *Sufficiency of the evidence.* The defendant asserts that the evidence was insufficient to support convictions on six of the sixteen counts: specifically, two counts alleging assaults with intent to rape Victoria and Stephanie; two counts alleging assaults with a dangerous weapon on Victoria and Stephanie; and

---

[7]This is not a case in which the defendant has exercised his constitutionally protected right not to testify, in which event references to the absence of explanations for the Commonwealth's evidence may constitute improper comment on the defendant's failure to take the stand. *Commonwealth* v. *Gouveia*, 371 Mass. 566, 570-571 (1976).

two counts alleging attempts to kidnap Victoria and Stephanie.[8] He .claims, therefore, that the denial of his motions for required findings of not guilty on these counts was error. We consider the evidence separately with respect to each victim.

a. *Victoria.* Walking home from a night basketball practice, Victoria encountered the defendant, who pulled up next to her in a Jeep and offered her a ride home. Despite her refusal, he continued to drive next to her, asking three more times whether she wanted a ride home. When she crossed the street, the defendant turned his vehicle about and drove down the wrong side of the street until his Jeep was again directly next to her. He said to her, "You're breaking my heart." As Victoria stepped off the sidewalk to cross the street again, the defendant got out of his vehicle with a weapon angled over his shoulder. She described the weapon as one with a long wooden handle and a blade, but possibly a firearm. At that point, the defendant was about one car's length away from Victoria. She was frightened, and started to run toward a fast food restaurant, while the defendant shouted, "Don't run from me, I'll hunt you down." The defendant reentered the Jeep, made a U-turn, and drove toward her, but she was able to reach the restaurant and safety.

This evidence warranted each of the jury determinations challenged by the defendant. Viewed in the light most favorable to the Commonwealth, see *Commonwealth v. Latimore*, 378 Mass. 671, 676-677 (1979), the jury could have found that the defendant intended to cause apprehension of immediate bodily harm, that his conduct was of the kind which would cause reasonable apprehension of bodily harm, and that the victim actually feared immediate physical harm. Thus, the evidence satisfied the required elements of an assault on an immediately threatened battery theory. See *Commonwealth v. Gorassi*, 432 Mass. 244, 248 (2000); *Commonwealth v. Musgrave*, 38 Mass. App. Ct. 519, 521 (1995), *S.C.*, 421 Mass. 610 (1996). In addition, the defendant's intent to rape could permissibly be inferred given his efforts to get Victoria into the Jeep; the absence of any other motive, such as larceny; the defendant's statement

---

[8]The defendant does not challenge the sufficiency of the evidence with regard to the convictions arising from the attacks on Yvonne or Julia or the conviction of unlawful possession of a dangerous weapon.

that she was breaking his heart; and the evidence that he had in fact raped two other young women within a matter of days. The jury could lawfully conclude that the Commonwealth had proved the elements of the charge of assault with intent to rape. See *Commonwealth* v. *Mahar*, 21 Mass. App. Ct. 307, 313-315 (1985).

The jury finding that the double-edged knives brandished by the defendant during his assault on Victoria constituted a dangerous weapon was warranted and requires no discussion.

With respect to the charge that the defendant attempted to kidnap Victoria, there was sufficient evidence to show that the defendant had the specific intent to kidnap, that he took an overt step toward the commission of the crime, that the overt act came near to achievement of the crime, and that he failed to complete it. See *Commonwealth* v. *Gosselin*, 365 Mass. 116, 121 (1974). Contrast *Commonwealth* v. *Banfill*, 413 Mass. 1002, 1003 (1992). The overt act in question was stated as required in the indictment. *Commonwealth* v. *Gosselin, supra* at 121. Here, the overt act was a threat with a weapon for the purpose of getting the intended kidnap victim into the defendant's Jeep. There was no error in denying the defendant's motion for a required finding with respect to the charges involving Victoria.

b. *Stephanie.* Stephanie was walking home from school in the afternoon when the defendant approached her in his Jeep. He stopped the Jeep about four yards ahead of her, and got out holding his distinctive weapon. He ordered her into the Jeep, saying that he had killed people before and would kill her. She testified that she was afraid. Stephanie ran to a variety store and escaped. For the reasons stated above in connection with the case involving Victoria, the jury were warranted, see *Commonwealth* v. *Latimore, supra*, in convicting the defendant of assault with intent to rape, assault with a dangerous weapon, and attempted kidnapping.

*Judgments affirmed.*