COMMONWEALTH vs. JUAN C. PENA & others.[1]

No. 06-P-1062.

Suffolk. December 6, 2006. - August 14, 2007.

Present: GELINAS, GREEN, & GRAINGER, JJ.

*Practice, Criminal,* Motion to suppress. *Firearms. Search and Seizure,* Automobile, Motor vehicle, Probable cause, Protective frisk.

A Boston Municipal Court judge erred in allowing three criminal defendants' motion to suppress evidence consisting of firearms found in a compartment under the rear seat of a motor vehicle that the police had stopped, where, although police officers' discovery of a plastic bag of marijuana on the person of one defendant, who had been sitting in the front passenger seat, did not provide probable cause to search the motor vehicle for additional drugs or drug paraphernalia [717-718], the search was justified as a protective search for weapons that the defendants might have used to escape or retaliate against the officers, where the defendant who was sitting in the rear seat refused to sit still, made erratic movements of his hands, and might have gained access to the rear of the vehicle [718-719].

COMPLAINTS received and sworn to in the Central Division of the Boston Municipal Court Department on September 29, 2005.

A pretrial motion to suppress evidence was heard by *Raymond G. Dougan, Jr., J.*

An application for leave to prosecute an interlocutory appeal was allowed by *John M. Greaney, J.,* in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*David D. McGowan (Anne M. Thomas,* Assistant District Attorney, with him) for the Commonwealth.

*Samson Huang (David Rossman & Terrance W. Stone* with him) for Pedro A. Valdez, Jr., & another.

*Bruce L. Namenson* for Jean C. Roy, Jr.

GELINAS, J. The Commonwealth appeals from an order of a

---

[1]Pedro A. Valdez, Jr., and Jean C. Roy, Jr.

judge in the Boston Municipal Court allowing the defendants' motion to suppress firearms found in a compartment under the rear seat of a Volkswagen in which one defendant, Juan C. Pena, was the front seat passenger. It argues that the judge erred in allowing the motion because the police had probable cause to conduct a warrantless search under a rear seat cushion in the vehicle, after discovering marijuana on the person of Pena. The Commonwealth also contends that the discovery was the result of a valid protective search based on the officers' concern for their safety. We reverse the judge's allowance of the motion, concluding that the discovery of the firearms was the result of a valid protective search.

The defendants, Pena, Pedro A. Valdez, Jr., and Jean C. Roy, Jr., were each charged with one count of unlicensed possession of a firearm and one count of possessing a firearm and ammunition without a firearm identification card, in violation of G. L. c. 269, § 10. Pena and Valdez were also charged with one count of possessing a firearm with a defaced serial number, in violation of G. L. c. 269, § 11C. Roy was also charged with possession of a firearm with a defaced serial number while attempting to commit a felony, in violation of G. L. c. 269, § 11B. Pena was also charged with one count of possession of marijuana, a class D substance, and another count of possession of a class B substance, in violation of G. L. c. 94C, § 34.

We take the facts from the judge's findings, supplemented by uncontradicted evidence in the record. See *Commonwealth* v. *Colon*, 449 Mass. 207, 214 (2007); *Commonwealth* v. *Scott*, 52 Mass. App. Ct. 486, 492 (2001). On September 29, 2005, at about 1:30 A.M., Boston police Officer Joseph Holmes stopped a black Volkswagen automobile on Knapp Alley, at the corner of Knapp Street in the Chinatown section of Boston. The Volkswagen was going the wrong way on a one-way street. Chinatown is a high-crime area, and Knapp Alley had been the scene of drug deals and shootings, including a shooting of a Boston police officer, prior to September 29, 2005.

Except for the windshield, the windows of the Volkswagen were tinted, limiting visibility into the vehicle. Valdez sat in the driver's seat, Pena sat in the front passenger seat, and Roy sat in the rear passenger seat.

Officer Holmes asked Valdez for his driver's license, which Valdez could not find. Holmes then asked that the car's windows be lowered so that he could see inside the vehicle. Upon seeing the other defendants inside the car, Holmes asked all the defendants to put their hands where he could see them. All three defendants responded by raising their hands above their heads. Holmes called for backup.

Valdez asked Officer Holmes for permission to get out of the Volkswagen in order to search his pockets for his driver's license. Valdez and Holmes went to the area between the rear of the Volkswagen and the front of Holmes's cruiser. Officer Lynwood Jenkins, Officer Jason Reid, and Sergeant Martin Kraft arrived. Holmes obtained Valdez's identifying information and went to his cruiser to check the status of Valdez's license. At that point, Holmes intended only to issue a motor vehicle citation.

Officer Jenkins stood at the front passenger side of the Volkswagen, keeping watch over Pena in the front passenger seat. Officer Reid searched the driver's seat where Valdez had been seated, looking under the seat and opening and looking into the console between the front seats.

Pena and Roy began complaining to each other about the stop of the car. Pena continually moved his hands, at times placing them out of Officer Jenkins's sight. Jenkins alerted Sergeant Kraft, who was standing next to the front passenger door, and asked that Pena be removed from the Volkswagen for the officers' safety.

After Pena got out of the car, Officer Jenkins conducted a patfrisk of Pena's outer clothing. During the course of this patfrisk, Jenkins felt a hard object in one of Pena's pockets. Thinking that the object might be a weapon, Jenkins removed it. The object was a cigarette lighter; a plastic bag of what appeared to be marijuana also came out of Pena's pocket with the lighter. A total of three small plastic bags of marijuana, along with a pill wrapped in plastic, were recovered from Pena. The officers arrested Pena and took him to the area between the Volkswagen and the police car.[2]

---

[2]Pena has not appealed the denial of his motion to suppress the fruits of this search.

After Pena was placed under arrest, Officer Reid searched the glove box, the area under Pena's seat, and the area where Pena had been sitting. Roy, still in the back seat of the Volkswagen, continued to protest the stop. He was moving his hands around, and repeatedly told Reid, "Check the trunk!" Reid asked Roy to quiet down and keep his hands still, where they could be seen. When Roy instead continued moving his hands around, he was also removed from the Volkswagen and taken to the area between the Volkswagen and the police car. Only Pena was under arrest at that time.

When Roy left the back seat of the Volkswagen, Reid noticed that the back seat cushion "wasn't seated properly." Reid had owned two similar Volkswagens and was familiar with the car. Reid searched where Roy had been seated and pulled away the back seat cushion, lifting the upholstery under the cushion. He saw a layer of felt with lumps covering the sheet metal. The lumps felt like solid, hard objects. Lifting the felt, Reid saw two firearms. He yelled out, "Gun!" and told the other officers that he had discovered guns in the car.

At that point, Roy and Valdez were placed under arrest. The guns were later determined to be a .25 caliber firearm loaded with five rounds of ammunition, and a nine millimeter firearm loaded with ten rounds of ammunition. Neither the status of Valdez's driver's license nor the ownership of the Volkswagen was determined until after these events.

In allowing the motion to suppress, the judge specifically ruled that "[w]hile Mr. Roy was seated on the rear seat during the stop, he could not have gained access underneath the seat he was sitting on. Also, he could not have placed anything underneath the rear seat he was sitting on while being seated on it."

The defendants moved to suppress the evidence obtained during the stop, claiming violations of their rights under the Fourth and Fifth Amendments to the United States Constitution and under arts. 12 and 14 of the Massachusetts Declaration of Rights. The Boston Municipal Court judge allowed the motion as to the firearms only. A single justice of the Supreme Judicial Court allowed the Commonwealth's application for interlocutory review and reported the appeal to the Appeals Court.

*Standard of review.* Our standard of review with respect to

motions to suppress is well known. We accept the motion judge's findings of fact absent clear error, acknowledging that the weight and credibility of testimony is for the judge hearing the motion, but we review independently the motion judge's ultimate findings and conclusions of law. *Commonwealth* v. *Clark*, 65 Mass. App. Ct. 39, 43 (2005). "Our duty is to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." *Ibid.*, quoting from *Commonwealth* v. *Vesna San*, 63 Mass. App. Ct. 189, 190 (2005). "Since the search of the defendant's automobile was conducted without a warrant, the burden was on the Commonwealth to show that it was reasonable under the Fourth Amendment to the United States Constitution." *Commonwealth* v. *Moon*, 380 Mass. 751, 759-760 (1980). "Searches and seizures conducted outside the scope of valid warrants are presumed to be unreasonable. In such circumstances, the burden is on the Commonwealth to show that the search or seizure falls within a narrow class of permissible exceptions." *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 303 (1979).

*Probable cause.* The Commonwealth argues that the discovery of the plastic bag of marijuana on Pena's person provided probable cause for the officers to search under the seat cushion for additional drugs or drug paraphernalia. We disagree.

In *Commonwealth* v. *Alvarado*, 420 Mass. 542, 555 (1995), the court held that the mere discovery of cocaine on the defendant's person, although he had been taken from the motor vehicle, did not give the police probable cause to believe that his car contained additional drugs, even where the officer stated that he had observed the defendant with his hand near a box in the car immediately prior to his arrest.

In *Commonwealth* v. *Moon*, *supra* at 760, the court determined that a warrantless search of a car based on a witness description of the suspect who matched the appearance of the car's owner, where the witness had seen the suspect carrying a knife, was illegal. "The fact that the person with the knife may have arrived in the neighborhood in the car did not by itself provide probable cause for the police to search the car in the hope of finding some material which might tend to identify or incriminate him." *Ibid.*

Although the Commonwealth cites a series of cases for the proposition that discovery of controlled substances gives probable cause to search for additional controlled substances in a nearby vehicle, these cases concern discoveries of drugs in locations having some connection to the vehicle searched, rather than to a particular individual who happened to arrive at the location in the vehicle. See *Commonwealth* v. *Moses,* 408 Mass. 136, 144-45 (1990) (drugs and handgun discovered in vehicle during protective search, coupled with other factors, gave rise to probable cause to search entire vehicle); *Commonwealth* v. *Motta,* 424 Mass. 117, 119-120 (1997) (probable cause to search vehicle of defendant who police knew had used automobile to deliver drugs, and who was on his way to sell heroin to agent); *Commonwealth* v. *Allain,* 36 Mass. App. Ct. 595, 601-602 (1994) (marijuana in plain view in ashtray of vehicle stopped for speeding); *Commonwealth* v. *Kitchings,* 40 Mass. App. Ct. 591, 593 (1996) (vehicle reeking of marijuana and ammunition clip in plain view); *Commonwealth* v. *Dolby,* 50 Mass. App. Ct. 545, 550-551 (2000) ("bong" seen by officer through window of vehicle); *Commonwealth* v. *Crespo,* 59 Mass. App. Ct. 926, 927-928 (2003) (cocaine on ground apparently thrown from vehicle during crash). Here there was no similar connection between the car and Pena's drugs.

*Protective search.* The Commonwealth also argues that the search was a constitutional protective search for weapons. We agree with the Commonwealth.

"[I]n appropriate circumstances a *Terry* type search may extend into the interior of an automobile." *Commonwealth* v. *Almeida,* 373 Mass. 266, 270 (1977). See generally *Terry* v. *Ohio,* 392 U.S. 1, 21-22 (1968). "Essentially, the question is whether a reasonably prudent man in the policeman's position would be warranted in the belief that the safety of the police or that of other persons was in danger." *Commonwealth* v. *Silva,* 366 Mass. 402, 406 (1974). In the *Almeida* case, "[a]t one point the defendant twisted to the right in the seat at a time when the policeman could not observe his hands. At the time that the search took place, the police had not yet learned whether the vehicle was stolen." *Commonwealth* v. *Almeida, supra* at 272.

Here, the potential threat to the officers was not Pena, who

was under arrest. See *Commonwealth* v. *Toole*, 389 Mass. 159, 162 (1983); *Commonwealth* v. *Rose*, 25 Mass. App. Ct. 905, 906 (1987). Rather, the potential threat came from Roy, whose initial willingness to raise his hands at Holmes's request gave way to a refusal to sit still, erratic movement of his hands, and repeated insistence that Reid "[c]heck the trunk." These actions, like the twisting motions of the defendant in *Almeida*, occurred at a time when the officers had not yet determined whether the vehicle was stolen. Roy was not under arrest, and might easily have gained access to the rear of the vehicle, with or without the officer's permission.[3] See *Michigan* v. *Long*, 463 U.S. 1032, 1051-1052 (1983) (suspect, despite being under brief control of police officer, may break away from police control and retrieve weapon from automobile, or may be permitted to re-enter vehicle before investigation is over and have access to weapons).

On the basis of the facts known to him, the arresting officer was justified in conducting a search of the automobile for the limited purpose of ascertaining that it contained no weapons that the defendants might use to escape or retaliate against the officer. *Commonwealth* v. *Lucido*, 18 Mass. App. Ct. 941, 942 (1984).

The order allowing the motion to suppress evidence of the firearms is reversed, and the case is remanded to the Boston Municipal Court.

*So ordered.*

---

[3]Although the trial judge found that Roy could not have gained access to anything under the seat while he was sitting on that seat, there remained the possibility of Roy suddenly returning to the car after being removed from it, or of Roy rising from his seat for the purpose of gaining access to the firearms. The police had observed and cautioned Roy about his erratic physical movements and behavior.