COMMONWEALTH *vs.* ISHMAL HAYNES. No. 11-P-1947. February 21, 2013. *Firearms. Constitutional Law,* Search and seizure. *Search and Seizure,* Motor vehicle, Protective sweep. *Evidence,* Firearm. *Practice, Criminal,* Motion to suppress.

The defendant is charged with carrying a firearm (subsequent offense), unlawful possession of ammunition, unlawful possession of a loaded firearm, and possession of a firearm with a defaced serial number. After the allowance of the defendant's motion to suppress, the Commonwealth brought this interlocutory appeal. We reverse.

*Facts.* The defendant's arrest and discovery of the gun and ammunition in his rental car occurred on November 8, 2009, a Sunday night, shortly after 9:30 P.M. While patrolling in what they knew to be a high crime area of the Dorchester section of Boston,[1] State Trooper Walter Foley and Boston police Officers Anthony Serra and Daniel Griffin stopped the defendant after he had committed several traffic violations.

When Trooper Foley asked the defendant for his license and registration, the defendant

> "reached to his glove box. He opened it and shut it quickly without reaching inside. The defendant did not look into the glove box, although

---

[1]The judge found that "[t]he officers were concentrating on the area . . . because [it] was known to the Boston Police for gun violence and arrests, major gang and drug activity, shots-fired reports and some homicides."

his head was facing that way. The defendant did not retrieve anything from the glove box.

"The defendant leaned quickly with his right hand toward the floor. He sat up and put his right hand under his thigh. Trooper Foley could not see what, if anything, the defendant had in his right hand. Officer Serra saw that the defendant had taken a tissue from the floor and had put it under his thigh."

Based on those gestures and "the frequency of violent crimes in the area, Trooper Foley and Officer Serra became concerned that the defendant might be getting or concealing a weapon in the car." The defendant was therefore ordered out of his car and Trooper Foley searched the vehicle's interior. During the search, Trooper Foley noticed that the plastic panel around the radio on the front console was slightly ajar in the bottom right area of the radio, and that the panel was not seated properly against the main part of the console.[2] Based on his experience and training that voids behind vehicle panels are often used to hide guns or illegal drugs, Trooper Foley put his fingers under the edge of the panel and effortlessly pulled it out. The panel came out easily, with no damage to the car. In that space, Trooper Foley saw a handgun. The officers arrested the defendant upon learning that he did not have a license to carry a firearm.

The judge found that the emerging circumstances permitted the officers to stop the defendant, order him out of the vehicle, pat frisk him, and conduct a protective search of the automobile. However, the judge found that the search behind the radio panel, which uncovered the gun, exceeded the permissible scope of the vehicle search.[3]

On appeal, the Commonwealth asserts that the judge's rationale concerning the search behind the radio panel (see note 3, *supra*) erroneously focused on the situation outside the car as opposed to the sole consideration, when determining the permissible scope of a protective search of an automobile, whether a weapon could be hidden in and quickly retrieved from the vehicle.

Conversely, the defendant argues that the police lacked reasonable suspicion to search the vehicle, and, in any event, the search exceeded the scope of *Terry* v. *Ohio*, 392 U.S. 1 (1968), because the defendant did not have immediate access to the area behind the panel. He also argues that the officers did not have a basis for the exit order.[4]

---

[2]Officer Serra saw a folding knife in the front center console, and Trooper Foley saw a marijuana cigarette there. At oral argument, the Commonwealth did not press the argument that the discovery of the marijuana cigarette by the officers allowed them to search the vehicle.

[3]The judge found, "I recognize that the radio panel in the defendant's car could have been quickly removed by anyone close enough to reach it. Nevertheless, considering the number and positions of the officers, the relatively safe position of the defendant five feet behind the car next to an officer, the lack of other persons who could present a danger, and the vehicle offense basis for the stop, the officer's removal of the radio panel was not within the reasonable limits of a *Terry* weapons search [see *Terry* v. *Ohio*, 392 U.S. 1 (1968)] to protect the safety of the officers or the public."

[4]The defendant does not argue that the initial stop of his vehicle was improper. See *Commonwealth* v. *Bacon*, 381 Mass. 642, 644 (1980).

*Discussion.* In reviewing a judge's ruling on a motion to suppress, "we accept the judge's subsidiary findings of fact absent clear error, but conduct an independent review of the judge's ultimate findings and conclusions of law." *Commonwealth* v. *Washington,* 449 Mass. 476, 480 (2007).

When police officers stop a vehicle for traffic violations, they are permitted to order the vehicle's occupants out of the vehicle if the officers reasonably fear for their own safety or the safety of others. *Commonwealth* v. *Goewey,* 452 Mass. 399, 406-407 (2008). "[I]t does not take much for a police officer to establish a reasonable basis to justify an exit order . . . based on safety concerns." *Id.* at 407, quoting from *Commonwealth* v. *Gonsalves,* 429 Mass. 658, 664 (1999).

The circumstances that led up to the exit order were a nighttime stop in a dangerous neighborhood and the defendant's actions of quickly reaching to the glove compartment, opening and closing it without reaching inside, and then quickly leaning to the floor before putting his hand under his thigh. The defendant argues that because Officer Serra saw that he was reaching for a tissue, his gestures were merely "odd yet benign." We conclude that, under the circumstances, as the motion judge found, the officers acted permissibly. Since neither officer knew what was under the defendant's leg, where he apparently placed the tissue, there was an adequate reason to order the defendant to exit the vehicle. See *Commonwealth* v. *Stampley,* 437 Mass. 323, 327 (2002).

The officers were justified in conducting "a *Terry*-type search of the vehicle's interior." *Commonwealth* v. *Graham,* 78 Mass. App. Ct. 127, 129 (2010). Here, the search of the automobile was within the scope of a permissible protective search because the proximity of the radio panel to the defendant upon his release would allow him easy access to it. See *ibid.* (locked glove compartment). See also *Commonwealth* v. *Pena,* 69 Mass. App. Ct. 713, 714 (2007) (under rear seat). That the defendant was "detained" outside the car at the time of the search is of no import in this case, as he would have been allowed to reenter the motor vehicle once nothing illegal was found on his person. See *Commonwealth* v. *Santiago,* 53 Mass. App. Ct. 567, 571 (2002) (*Terry* stops frequently terminate with suspect's release).

As in *Pena* and *Graham,* the defendant here was being detained for traffic violations and it was therefore likely that he would soon return to his car. Like the officer in *Pena* who observed that the rear seat cushion "wasn't seated properly," 69 Mass. App. Ct. at 716, Trooper Foley saw that the panel housing the radio was "slightly ajar" and "knew from his experience and training"[5] that the panel "was not seated properly against the main part of the console." Given his specialized training in detecting "hides" in natural voids contained

---

[5]Trooper Foley testified that prior to his training as a State trooper, he had been a car salesman for eight years. We note Foley's specialized knowledge as a car salesman because it was uncontroverted and undisputed by the parties, and the motion judge found all of the officers' testimony credible. See *Commonwealth* v. *Isaiah I.,* 448 Mass. 334, 337 (2007). Lastly, that the car was a rental might lead one to surmise that such an obvious defect was out of the ordinary. As this was not developed below, we need not consider it.

in motor vehicles,[6] the officer was not required to put that training aside and allow the defendant to return to the motor vehicle, where a gun would potentially be readily accessible. The officers' concerns for their own safety, as well as that of the public, were reasonably related to the scope of the search.

*Order allowing motion to suppress reversed.*

*David D. McGowan*, Assistant District Attorney (*Abigail K. Holland*, Assistant District Attorney, with him) for the Commonwealth.

*Francis M. O'Boy* for the defendant.

---

[6]Trooper Foley testified that he had recovered between ten and twelve firearms hidden in motor vehicle "hides."

