NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-124                                          Appeals Court


COMMONWEALTH  vs.  JERRY MENEIDE.


No. 15-P-124.

Plymouth.     November 12, 2015. - June 1, 2016.

Present:  Cohen, Grainger, & Wolohojian, JJ.


Marijuana.  Firearms.  Practice, Criminal, Motion to suppress.
     Search and Seizure, Automobile, Protective frisk,
     Reasonable suspicion.  Constitutional Law, Search and
     seizure, Stop and frisk.




     Complaint received and sworn to in the Brockton Division of
the District Court Department on October 30, 2013.

     A pretrial motion to suppress evidence was heard by Stephen
S. Ostrach, J.

     An application for leave to prosecute an interlocutory
appeal was allowed by Geraldine S. Hines, J., in the Supreme
Judicial Court for the county of Suffolk, and the appeal was
reported by her to the Appeals Court.


     Gail M. McKenna, Assistant District Attorney, for the
Commonwealth.
     Moya R. Gibson for the defendant.


     WOLOHOJIAN, J.  Before us is the Commonwealth's

interlocutory appeal from an order allowing, in part, the

defendant's motion to suppress.  At issue is the search of an automobile after a routine traffic stop during which a noncriminal amount of marijuana was found.[1]  The motion judge found that safety concerns justified the exit order and patfrisk of the driver, but that once the patfrisk resulted in the discovery of only a noncriminal quantity of marijuana, safety concerns did not justify searching the backseat armrest.  We affirm.

Background.  We summarize the findings of the motion judge, none of which are challenged.  At approximately 10:30 P.M. on October 29, 2013, three State troopers were driving in an unmarked car on the south side of Brockton.  Their attention was drawn to a car that took a right turn from a left-turn only lane.  The car was a small four-door sedan without tinted windows.  It was traveling slowly, and the officers decided to follow it.  As they did so, they observed the defendant (who was driving) speaking on a cellular telephone (cell phone) and looking from side to side.  The defendant, who was unknown to the troopers, was alone in the car.  As the troopers followed, the defendant drove slowly through a residential area and

---

[1] The defendant is charged with carrying a firearm without a license, G. L. c. 269, § 10(a); possession of a firearm without a firearm identification card, G. L. c. 269, § 10(h)(1); and carrying a loaded firearm without a license, G. L. c. 269, § 10(a) & (n).

through an apartment complex, all the while continuing to speak on his cell phone and appearing to look for someone. The troopers had no particular information about the apartment complex. However, they knew that drug sales had been taking place in the parking lots of commercial establishments in the general area.

After one or two minutes following the defendant in this manner, the troopers observed him take a right turn on red without coming to a full stop. Trooper Walter Foley activated his blue lights, and the defendant pulled over, slowly stopping his car in about 150 feet. The troopers saw the defendant lift his buttocks six inches. They could see the defendant's head and shoulders, but they could not see his hands. Nonetheless, they described the defendant's action as being consistent with putting his left hand under his buttocks. This action seemed unusual and, although the defendant did not dip out of sight, his movement caused the officers to suspect that he had concealed something beneath him, presumably contraband -- whether narcotics or weapons.

The defendant was calm when the troopers approached. He produced his license upon demand, but could not locate the registration. The defendant was polite during Trooper Foley's questioning, had nothing in his hands, and the troopers saw nothing suspicious in the car or the front seat. However,

Trooper Foley smelled an overwhelming odor of unburnt marijuana and air fresheners emanating from the car. The defendant acknowledged that he had "a little weed." He was then asked to leave the car to be pat frisked. The defendant questioned why this was necessary, but slowly complied with the order. He became nervous.

A packet of marijuana was found in the defendant's jacket pocket, and a smaller one was located in the pocket of his pants. Together, the two packets weighed less than an ounce, and Trooper Foley did not intend to apply for a criminal complaint for possession. The trooper was trained to recognize the indicia of "distribution," which include air fresheners and packaging.[2]

The defendant was escorted to the back of the car where he was held while Trooper Foley "pat frisked" the car. Trooper Foley first searched in the area of the driver's seat (where he found nothing) and then opened the rear driver's side door. His

---

[2] The judge's use of quotation marks around the word "distribution" is unexplained, but appears to have significance. The judge also framed in quotation marks "furtive mo[ve]ments," "pat frisk" (when used in connection with the vehicle), and "wing span." All of these phrases and words were used by the testifying officer and so it could be that the judge intended simply to indicate that his finding contained a direct quotation. However, when viewed in the context of the findings, it is also possible that the judge used quotation marks to express skepticism. We do not attempt to resolve this ambiguity since our outcome does not depend on its resolution one way or the other.

search in the area of the back driver's side seat also turned up nothing. The trooper then pulled down the back center armrest and discovered a gun. The armrest was within what the trooper described as the defendant's "wing span" (see note 2, supra) in that the defendant could have reached back and pulled down the armrest while seated in the front seat.

On these facts, the motion judge concluded that the defendant's car was validly stopped for a civil motor vehicle offense, and that the exit order was justified based on the standard articulated in Commonwealth v. Gonsalves, 429 Mass. 658, 664 (1999), that "it does not take much for a police officer to establish a reasonable basis to justify an exit order or search based on safety concerns." However, the judge concluded that, once the patfrisk of the defendant revealed only a noncriminal amount of marijuana, the defendant should have been given two civil citations and sent on his way. The judge reached this conclusion on two bases. First, there was no reasonable suspicion of criminal activity. Second, given that the defendant was unknown to the police, there were no reports of violence, his behavior was nonthreatening, and he was alone, while there were three officers present, there was no heightened safety concern in that there was nothing other than "the very real safety concern every officer has particularly at night." The judge accordingly denied the defendant's motion to suppress

to the extent it related to the marijuana located during the patfrisk, but allowed the motion with respect to the fruits of the search of the automobile.

Discussion. The defendant's motion to suppress challenged the exit order, the patfrisk, and the automobile search. The motion was allowed only with respect to the fruits of the automobile search, and that is the subject of the Commonwealth's appeal.[3] At the outset, we note that the Commonwealth does not argue that the exit order, the patfrisk, or the automobile search were justified by either probable cause or reasonable suspicion.[4] The Commonwealth argues only that these events were justified by objectively reasonable safety concerns.

---

[3] The fruits were not only the gun, but also the defendant's statements after its discovery. The defendant admitted that he did not have a license to carry a firearm, that the gun was his, and that he carried it for his protection. When questioned why he had been driving slowly, the defendant stated that he had been looking for a friend. The defendant sought to suppress these statements, relying on Wong Sun v. United States, 371 U.S. 471 (1963), and Miranda v. Arizona, 384 U.S. 436 (1966). The judge did not explicitly state that the statements were suppressed in addition to the gun and ammunition. However, that conclusion necessarily follows given the judge's reasoning.

[4] The smell of burnt or unburnt marijuana, standing alone, no longer provides either reasonable suspicion or probable cause. See Commonwealth v. Cruz, 459 Mass. 459, 469 (2011); Commonwealth v. Craan, 469 Mass. 24, 28 n.6 (2014); Commonwealth v. Rodriguez, 472 Mass. 767, 769-770 (2015); Commonwealth v. Fontaine, 84 Mass. App. Ct. 699, 706 (2014). The Commonwealth does not argue that any of the additional facts presented in this case, combined with the odor of marijuana, supported reasonable suspicion or probable cause.

Although the defendant has not cross-appealed, he urges us to affirm the suppression order on another ground, namely the claimed invalidity of the exit order. "To avoid the 'possibility of continuing controversy over the same evidence,' Commonwealth v. Boswell, 374 Mass. 263, 267 (1978), we will permit [the defendant] to raise the propriety of the seizure 'under the umbrella of the government's appeal.'" Commonwealth v. Catanzaro, 441 Mass. 46, 51 n.8 (2004), quoting from Commonwealth v. Mottola, 10 Mass. App. Ct. 775, 782 (1980). See Commonwealth v. Bakoian, 412 Mass. 295, 298 n.2 (1992). For this reason, we turn first to the validity of the exit order.

As a general matter, in the context of a routine traffic stop, "once a stopped driver has produced the necessary papers and they are found to be in order, he and his passengers are to be promptly released." Commonwealth v. Gonsalves, 429 Mass. at 668. However, an officer is justified in issuing an exit order to a driver or passenger when "a reasonably prudent man in the policeman's position would be warranted in the belief that the safety of the police or that of other persons was in danger." Id. at 661, quoting from Commonwealth v. Santana, 420 Mass. 205, 212-213 (1995). See Commonwealth v. Silva, 366 Mass. 402, 406 (1974); Commonwealth v. Almeida, 373 Mass. 266, 271 (1977); Commonwealth v. Sheridan, 470 Mass. 752, 761 (2015). A "mere hunch is not enough"; instead, "objective circumstances [must

make] it reasonable to issue an exit order to the driver or passengers in a stopped vehicle," Gonsalves, 429 Mass. at 664, 666, because of "a heightened awareness of danger," Commonwealth v. Demirtshyan, 87 Mass. App. Ct. 737, 744 (2015) (quotation omitted). "[I]t does not take much for a police officer to establish a reasonable basis to justify an exit order or search based on safety concerns," provided "the intrusiveness of the officer's conduct [is] 'proportional to the degree of suspicion that prompted it.'" Commonwealth v. Daniel, 464 Mass. 746, 752 (2013), quoting from Gonsalves, 429 Mass. at 664, and Commonwealth v. Torres, 433 Mass. 669, 672 (2001).

Here, the defendant's unusual action of lifting himself off the seat by six inches in a manner consistent with concealing something was sufficient to justify the exit order and patfrisk. The act of concealment heightened the safety concern inherent in every automobile stop and provided an objectively reasonable basis for the officer to take the protective measures of an exit order and patfrisk. See Commonwealth v. Stampley, 437 Mass. 323, 327 (2002), and cases cited. The officer was not required to know the exact nature of the object being concealed in order to have an objectively reasonable concern for his safety. See Commonwealth v. Haynes, 83 Mass. App. Ct. 903, 905 (2013). While it is true that the odor of marijuana in the car could support an inference that the defendant sought to conceal drugs,

that inference was not the only one that could reasonably be drawn.[5] While it is equally true that there is no "blanket rule that all persons suspected of drug activity are to be presumed armed and dangerous for constitutional purposes," Commonwealth v. Washington, 449 Mass. 476, 483 (2007); see Commonwealth v. Jimenez, 438 Mass. 213, 219 (2002), there is also no blanket rule that a driver who conceals something when officers stop him is presumed to be concealing drugs rather than a weapon. We conclude that, in the circumstances presented, the trooper had objectively reasonable safety concerns justifying the exit order, the patfrisk, and a limited search of the immediate area where the defendant had been seated.[6] Those acts were proportionate to the suspicion that the defendant had concealed a weapon beneath himself or in a back pocket.

The question, though, is whether, notwithstanding the justification for the search at its inception, it became excessive in its scope once no weapon was found during the patfrisk or in the immediate area where the defendant had been seated. "It is settled in law that, in appropriate

---

[5] Two of the three troopers involved in the stop testified at the hearing; both testified that, within their experience, guns are involved in a significant proportion of their drug cases. One officer testified to a fifty percent association; the other, ninety percent. However, the judge did not adopt the officers' testimony, nor did he make findings on this topic.

[6] The judge's view that, after the patfrisk, the officers could do nothing more than issue civil citations was too narrow.

circumstances, a Terry type of search may extend into the interior of an automobile so long as it is limited in scope to a protective end." Commonwealth v. Silva, 366 Mass. at 408. Such a search is to be restricted to the area from which it is reasonable to believe the suspect "might gain possession of a weapon." Ibid., quoting from Chimel v. California, 395 U.S. 752, 763 (1969). Commonwealth v. Almeida, 373 Mass. at 272. Thus, for example, where a defendant was seen to lock the glove compartment as police approached the car, the police "were entitled to open the glove compartment for the limited purpose of determining whether it contained a weapon." Commonwealth v. Graham, 78 Mass. App. Ct. 127, 130 (2010). And, where a defendant "mov[ed] his body down, to the right, and out of view," while seated in the driver's seat, a protective search of the "driver's seat area" was permissible. Commonwealth v. Myers, 82 Mass. App. Ct. 172, 174, 177 (2012). To similar effect is Commonwealth v. Almeida, supra at 272, where the defendant was observed to twist his body to the right, and the protective search was limited to a visual inspection and search beneath the defendant's seat. Similarly, where a defendant leans forward and down, and offers to retrieve his registration from the glove compartment, officers are allowed to look into the console and glove compartment as a protective measure. Commonwealth v. Lantigua, 38 Mass. App. Ct. 526, 527-528 (1995).

Compare Commonwealth v. Cruz-Rivera, 76 Mass. App. Ct. 14, 15, 18-19 (2009).  What these cases demonstrate is that the scope of a protective search within the interior of an automobile must be limited by, and rationally connected to, a safety concern about the particular area to be searched.

The Commonwealth points to the fact that the car was small and, therefore, the rear seat armrest was within the defendant's reach even while seated in the driver's seat.  But a Terry-type search into the interior of a car must be limited in scope and, as we have set out above, rationally connected to the circumstances that gave rise to the original safety concern.  We have found no case upholding a protective search into areas of a car about which there is no evidence to suggest there was any danger.  Nor have we found any case upholding the scope of a protective search based solely on the possibility that the defendant could reach a particular area of the car absent evidence that he did or would do so.  Nor have we found any case where we have applied the concept of "wing span" to define the scope of such searches (nor has the Commonwealth provided any), as opposed to searches incident to arrest.  See generally Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 12-3[a][1] (2016 ed.).

In this case, the defendant made no movement toward the backseat generally or more particularly toward the backseat

armrest, and there was no other evidence to suggest a weapon was concealed there. The officers had no information about the defendant, let alone any background information to suggest he was armed or dangerous. Contrast Commonwealth v. Santiago, 53 Mass. App. Ct. 567 (2002) (driver matched description of armed and dangerous serial rapist). He was calm and cooperative when approached, and produced his license. See Commonwealth v. Daniel, 464 Mass. at 753. Although he could not locate his registration, the officers were able to confirm that the registration was not suspended or revoked. The patfrisk together with the search of the driver's seat area dissipated the suspicion created by the defendant's act of lifting himself off his seat. Compare Commonwealth v. Douglas, 472 Mass. 439, 443 (2015) (any reasonable suspicion that rear seat passengers were armed and dangerous dissipated when patfrisks revealed no weapons). All that remained was the defendant's nervousness, and this was not enough. See Commonwealth v. Cruz, 459 Mass. 459, 468 (2011).

For these reasons, the order allowing in part and denying in part the defendant's motion to suppress is affirmed.

So ordered.