NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-211
24-P-214

COMMONWEALTH

vs.

DENNIS ORTIZ (and twelve companion cases).[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendants were each charged with various firearms offenses stemming from the discovery of two firearms in a "natural void" under the front center console of a car of which Defendant Erick Rivera was the driver and Defendant Dennis Ortiz was the front seat passenger.  The defendants filed motions to suppress the firearms, which were allowed by a judge of the Superior Court on the grounds that the exit order was not justified.  A single justice of the Supreme Judicial Court granted the Commonwealth leave to file an interlocutory appeal

_____

[1] Six against Dennis Ortiz and six against Erick Rivera.  In filings and in his brief, Defendant Erick Rivera has spelled his name as "Eric Rivera."  As is our custom, we spell the defendant's name as it was spelled in the indictments.

and reported the matter to this court. See Mass. R. Crim. P. 15 (a) (2), as amended, 476 Mass. 1501 (2017). We conclude that the exit order was justified by concern for officer safety and that the limited protective search of the car that led to the seizure of the firearms was based on a reasonable suspicion that the defendants were armed and dangerous. Accordingly, we reverse the order allowing the motions to suppress.

Background. We summarize the relevant facts from the judge's findings on the motions to suppress as follows. On the evening of November 22, 2020, Boston police Officers Christopher Stevens and Dennis Layden, both of whom were assigned to the Youth Violence Strike Force, were on patrol in Dorchester.[2] Both officers had extensive experience with firearm seizures and arrests, and, as members of the strike force, their responsibilities included keeping "abreast of gang affiliations and associations through police resources [and] community interactions."

At approximately 9:38 P.M., the officers received a ShotSpotter notification of gunfire at a location in Dorchester. The officers were near the location and proceeded toward that address. Traffic in the area was light. About ten minutes

---

[2] Another officer, Ramos, was in the cruiser with Stevens and Layden, but it is unclear whether Ramos was assigned to the strike force.

after receiving the ShotSpotter alert, the officers saw a gray car with "excessively tinted windows."[3] The officers activated their vehicle's lights and siren and stopped the car about three blocks from the location of the ShotSpotter.

Stevens approached the driver's side of the car and saw Rivera, who was in the driver's seat, lean forward significantly with his head near the side view mirror. Stevens was familiar with Rivera from previous street encounters. At the same time, Layden approached the passenger's side of the car and recognized Ortiz, whom he knew had a previous conviction for possession of a firearm and had recently suffered a gunshot wound. The officers knew that there were several gangs in the area and the defendants were affiliates of a gang that had been involved in a feud with another gang. The officers ordered the defendants to exit the car. The defendants complied, and the officers pat frisked them. Meanwhile, additional police officers arrived at the scene, resulting in approximately ten officers present.

Nothing was found on the defendants' persons during the patfrisk. Stevens then conducted a patfrisk of the driver's side area of the car and saw scratch or pry marks on a side panel of the center console. Based on his training and experience, Stevens knew that the area was a common place to

---

[3] The window tint was later measured at below the thirty-five percent minimum. See G. L. c. 90, § 9D.

3

hide weapons due to a "natural void" that most cars have in that location. Stevens used his flashlight to look "up under the side panel" and saw a firearm. He then searched and found a second firearm on top of the first firearm.

Discussion. "In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error . . . . We review independently the application of constitutional principles to the facts found." Commonwealth v. Cordero, 477 Mass. 237, 241 (2017), quoting Commonwealth v. Amado, 474 Mass. 147, 151 (2016).

1. The traffic stop. "Where the police have observed a traffic violation, they are warranted in stopping a vehicle" (citation omitted). Commonwealth v. Santana, 420 Mass. 205, 207 (1995). Here, as the judge properly concluded, the stop was lawful because the defendants were driving a vehicle that had improperly tinted car windows. See G. L. c. 90, § 9D. The defendants do not argue otherwise. Thus, our discussion focuses on the legality of the exit order and the ensuing patfrisk of the car.

2. Exit order. "[A]n exit order is justified during a traffic stop where (1) police are warranted in the belief that the safety of the officers or others is threatened; (2) police have reasonable suspicion of criminal activity; or (3) police are conducting a search of the vehicle on other grounds."

4

Commonwealth v. Torres-Pagan, 484 Mass. 34, 38 (2020), citing Amado, 474 Mass. at 151-152.

"While a mere hunch is not enough . . . it does not take much for a police officer to establish a reasonable basis to justify an exit order or search based on safety concerns . . . ."  Commonwealth v. Gonsalves, 429 Mass. 658, 664 (1999).  Here, the officers had "a reasonable suspicion of a threat to safety," Torres-Pagan, 484 Mass. at 38, justifying the exit order.

The officers stopped the car within ten minutes of the ShotSpotter alert and within three blocks of the location of the ShotSpotter itself.  Although the police were not investigating a report of a crime, an alert from a ShotSpotter also warrants further inquiry.  "We consistently have held that geographic and temporal proximity to a recent crime weigh towards reasonable suspicion in the [overall] analysis."  Commonwealth v. Evelyn, 485 Mass. 691, 704 (2020) (reasonable suspicion bolstered by police encountering defendant thirteen minutes after shooting, one-half mile away); Commonwealth v. DePina, 456 Mass. 238, 246 (2010) (police stopping defendant ten minutes and three blocks from report of shooting factor supporting reasonable suspicion).

Stevens's observation of Rivera leaning forward in the car also raised legitimate safety concerns.  Based on his training and experience, Stevens believed that the gesture could be an

5

attempt to store, hide, or access a weapon. Our case law has recognized such gestures as suggestive of retrieving or concealing an object. See, e.g., Commonwealth v. Stampley, 437 Mass. 323, 328 (2002) (defendant leaning forward twice "doing something underneath the front seat"); Commonwealth v. Torres, 433 Mass. 669, 674 (2001) (passengers "bent over" and "messing with something" on floor of stopped vehicle). The judge noted that Rivera's movement was consistent with looking in the side view mirror at the approaching officer, but an innocent explanation for a person's actions "does not remove [those actions] from consideration in the reasonable suspicion analysis." Commonwealth v. Sweeting-Bailey, 488 Mass. 741, 744 (2021), quoting Commonwealth v. DePeiza, 449 Mass. 367, 373 (2007).

The officers' familiarity with the defendants was also relevant to the reasonable suspicion calculus. While a person's criminal history is not automatically "suspicious," it may be considered in appropriate circumstances. Sweeting-Bailey, 488 Mass. at 751-752 (consideration of defendant's criminal history appropriate when officers were familiar with defendant's history of firearms-related charges and suspected that defendant possessed illegal firearm). "Additionally, evidence of gang membership may be considered as a factor in the determination of reasonable suspicion, although, standing alone, it does not

6

necessarily support a reasonable suspicion that a person may be armed and dangerous."  Id. at 752.  Here, the officers knew that there were several gangs in the area and that Rivera and Ortiz were affiliated with a gang that had been feuding with a rival gang.  They also knew Ortiz had a prior conviction for a firearms offense and had recently suffered a gunshot wound. Viewed together with the temporal and geographic proximity to the ShotSpotter activation and Rivera's gesture, evidence of the defendants' gang affiliation and Ortiz's prior conviction for a firearm offense are factors "that must be considered in the context of the totality of the circumstances analysis."  Id.

The fact that the officers did not order the defendants to exit the car until six minutes after they effectuated the traffic stop did not diminish the significance of the safety concerns or the relation to the ShotSpotter activation, as the defendants argue.  The passage of such a short period of time "[did] not lessen the danger posed by an officer's ongoing encounter with someone who may be armed."  Stampley, 437 Mass. at 329.  "The justification of an exit order does not depend on the presence of an 'immediate threat' at the precise moment of the order, but rather on the safety concerns raised by the entire circumstances of the encounter."  Id. at 328.

3.  The patfrisk and protective sweep.  As described above, the officers were justified in ordering the defendants out of

7

the car.  To justify a patfrisk of the defendants, however,
officers "must have a reasonable suspicion, based on specific
articulable facts, that the suspect is armed and dangerous."
Torres-Pagan, 484 Mass. at 38-39.  See Sweeting-Bailey, 488
Mass. at 754 ("The standard required to justify a patfrisk is
not the same as that which is required to justify an exit
order[;] however, the factors that justify an exit order also
may be part of the consideration in the patfrisk analysis").
Here, the totality of the circumstances justified the officers'
patfrisk of the defendants.  The officers stopped the defendants
close in time and place to the location of the ShotSpotter
report.  Rivera leaned forward as officers approached.  The
officers recognized the defendants as gang affiliates and knew
Ortiz had a prior firearm conviction.  These factors, when
considered together, were sufficient to establish a reasonable
suspicion that the defendants were armed and dangerous.

After pat frisking the defendants and finding no weapons,
the officers were justified in conducting a limited, protective
sweep of the car interior because the defendants could have
accessed a weapon after returning to the vehicle.  See
Commonwealth v. Silvelo, 486 Mass. 13, 16 (2020) (protective
sweep of car permitted where "defendant may access a weapon left
behind upon returning to the vehicle"); Commonwealth v.
Santiago, 53 Mass. App. Ct. 567, 571 (2002) (officer "not

8

required to risk becoming a victim upon the suspect's reentry into the vehicle").

Having seen "scratch or pry-marks" on the outside of the center console, an area he knew was a common place to hide weapons and a place the defendants could easily access, Stevens was justified in looking inside, where he immediately saw a gun. See Commonwealth v. Haynes, 83 Mass. App. Ct. 903, 904-906 (2013) (officer justified in pulling out car radio panel after noticing it was "slightly ajar"); Commonwealth v. Pena, 69 Mass. App. Ct. 713, 714-719 (2007) (officer justified in removing car seat cushion that was not "seated properly"). Here, the officers were not required to put aside their training and allow the defendants to return to the vehicle, where a gun or other weapon would potentially be readily accessible. See Haynes, supra at 906.

The totality of the circumstances justified the officers'

concerns for their safety in issuing the exit order and conducting a protective patfrisk of the car.[4]

Order allowing motions to suppress reversed.

By the Court (Vuono, Hershfang & Tan, JJ.[5]),

Clerk

Entered:  March 31, 2025.

---

[4] Probable cause existed to search the car for weapon-related contraband once the officer found the first firearm, justifying the recovery of the second firearm.  See Commonwealth v. Bostock, 450 Mass. 616, 624 (2008).

[5] The panelists are listed in order of seniority.